Commonwealth *v.* Vorhauer, Appellant.

86

Submitted September 12, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Calvin S. Drayer, Jr.,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf* and *J. David Bean,* Assistant District Attorneys, *William T. Nicholas,* First Assist-

ant District Attorney, and *Milton O. Moss*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., December 11, 1974:

The appellant, Hans Vorhauer, was found guilty by a jury of robbery, armed robbery, robbery together with other persons, conspiracy to commit robbery, and burglary. Post-trial motions were argued and denied. Following the imposition of sentence this appeal followed.

Appellant has advanced numerous alleged errors in support of his contention that he be afforded a new trial. We shall consider them in the order in which they were presented.

First, appellant argues that he was denied a speedy trial. The crimes for which he was subsequently indicted and convicted, occurred on the evening of December 7, 1967, when the home of Blanche and Herman Hoffman was burglarized and the Hoffman family robbed of personal property having an approximate value of $25,000.00. Due to the robbers' effective disguises the police investigation was both difficult and unproductive until April 29, 1970, when the appellant and Jerome McKenney were arrested and charged with the instant crimes. The information leading to these arrests was supplied by Jerome McKenney. On September 11, 1970, indictments were returned against the appellant and McKenney. In late October, 1970, the appellant absconded from the jurisdiction of the court and failed to appear for his original trial on June 22, 1971. On May 21, 1972, appellant was returned to Pennsylvania in the custody of federal authorities and remained in their custody until November 16, 1972, when he was surrendered to the Commonwealth to commence service of a previously imposed sentence. On September 4, 1973, the appellant was finally brought to trial.

Appellant cannot now complain that he was denied a speedy trial when his own conduct was responsible for the delay in his being brought to trial. See *Commonwealth v. Petrisko*, 432 Pa. 250 (1968); *Commonwealth v. Taylor*, 193 Pa. Superior Ct. 386 (1960); *Commonwealth ex rel. Sell v. Burke*, 174 Pa. Superior Ct. 344 (1953); *U. S. v. Tate,* 336 F. Supp. 58 (E.D. Pa. 1971). Although the crimes in question occurred in December, 1967, the appellant's identity and participation in the crimes did not become known to the police until 1970. Once the appellant's implication was disclosed the Commonwealth promptly instituted the procedures necessary to dispose of the charges. The appellant, however, fled the jurisdiction while released on bail and failed to return for his original trial scheduled for June 22, 1971. Under these circumstances the appellant's contention is without merit.

Appellant next takes issue with remarks made by the trial judge during trial[1] and upon completion of his charge to the jury,[2] which are alleged to have been prejudicial to the appellant.

In *Commonwealth v. Anskate*, 221 Pa. Superior Ct. 122, 124-25 (1972), this Court in discussing the issue of alleged prejudicial remarks by the trial court said: "It must be determined from all the circumstances whether a remark has a prejudicial effect; there is no

---

[1] While testifying on direct examination Mr. Hoffman referred to one of the robbers as "the taller gentleman," whereupon the trial judge commented: "You use the word 'gentleman.' Don't you think that's a little strained?. . . . I would call them men."

[2] Immediately prior to the jury's retirement to deliberate the trial judge remarked as follows: "As I say, you will all be excused including the alternates and you are excused as of now, the alternates, because the jury is going to retire to deliberate, but you can still have your lunch if you wish it. If not, I can excuse you for the term and you may go home and we are very appreciative of what you have done."

fixed rule applicable to every case. An accepted guide in determining prejudicial effect is that, if the remark may be said with fair assurance to have had but a slight effect upon the jury, if any at all, and one is not left in doubt that it had no substantial influence in the case, it will not vitiate an otherwise fair trial. Commonwealth v. Blose, 160 Pa. Superior Ct. 165, 50 A. 2d 742 (1947)." Considering the alleged prejudicial remarks in light of both the above principle, and the evidence presented during the trial, we conclude that they could not have had a substantial influence on the outcome of the instant case.

Appellant also contends that the trial judge committed error in his instructions to the jury regarding the testimony of a co-defendant. At appellant's trial, the principal witness for the Commonwealth was Jerome McKenney, who by his own admission was a participant in the commission of the crimes for which the appellant was convicted. The judge charged, in pertinent part, as follows:

"Now, there is no rule of law which forbids a jury to convict upon the uncorroborated testimony of an accomplice. While the law permits such a conviction it looks with disfavor upon this character of proof and because its source is corrupt the jury should ordinarily not rely on it unless corroboration is present.

. . . .

"The only requirement of the law is that you must before you accept [uncorroborated accomplice testimony] scrutinize it carefully and critically." Appellant contends that the charge was improper because it did not sufficiently show McKenney's possible motives for testifying, and it did not indicate to the jury why his testimony was suspect. We disagree with this contention. The instant charge is substantially similar to the one which received this Court's approval in *Commonwealth v. Darnell*, 179 Pa. Superior Ct. 461 (1955).

As we have repeatedly observed, "A trial judge should warn the jury of the corrupt source of an accomplice's testimony but the form of instruction lies within the discretion of the court." *Commonwealth v. Cunningham*, 161 Pa. Superior Ct. 276, 277 (1947); *Commonwealth v. Darnell*, supra; *Commonwealth v. McKenna*, 206 Pa. Superior Ct. 317 (1965). In *Commonwealth v. Bubna*, 357 Pa. 51, 66 (1947), our Supreme Court disposed of the instant issue by stating: "While it is the better practice for a trial judge to explain to a jury *why* the testimony of an accomplice should be considered with 'close scrutiny', i.e., carefully and critically, it is reasonable to believe that the average juror possesses sufficient intelligence to understand without specific instructions why the testimony of an accomplice is to be viewed with some suspicion and why it is not to be accepted unless it carries with it a clear conviction of its truthfulness. It is a matter of general knowledge that partners in crime are likely when apprehended to cast the chief blame on each other. It is also equally well known that partners in crime sometimes do tell the truth as to the commission of the crime." Accordingly, we find appellant's argument devoid of merit.

Appellant next assigns as error the refusal of the lower court to charge that since the prosecution did not call one Miriam Bass as a witness, this creates the presumption that the testimony, if produced, would be unfavorable.[3] Miriam Bass' name appeared in this case when McKenney testified that Mrs. Bass, who was a

---

[3] Appellant requested the following point for charge: "If a party has it peculiarly within its power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not produce such witnesses creates the presumption that the testimony, if produced, would be unfavorable. Graves v. United States, 150 U.S. 118, 121; United States v. Jackson, 384 F.2d 825, 828 (1967)."

close acquaintance of the Hoffmans, was the party who informed him that a burglary of the Hoffman residence would prove lucrative.

While we agree that appellant's requested point for charge is a well accepted rule of law, it is not applicable to the facts at bar. In most instances the rule should not be applied where a witness is equally available to both parties. *Commonwealth v. Black*, 186 Pa. Superior Ct. 160 (1958). Furthermore, the Commonwealth had no particular control over Mrs. Bass. See *Commonwealth v. Campbell*, 196 Pa. Superior Ct. 380 (1961). We also note that Miriam Bass is not listed on the indictments as a witness and, therefore, there was no duty on the part of the prosecution to notify appellant that she would not testify. *Commonwealth v. Horn*, 395 Pa. 585 (1959); *Commonwealth v. Jones*, 455 Pa. 488 (1974). On these facts we hold that the trial judge correctly refused appellant's requested point for charge.

Appellant next contends that his constitutional right to confront his accusers was unduly restricted. The basis for this allegation is that during trial the Commonwealth objected to a question on cross-examination regarding McKenney's present place of employment. In chambers, under questioning of the district attorney, McKenney testified that because of his cooperation in this case, and other cases where he testified as a Commonwealth witness, threats had been made on his life and those of his family. Furthermore, he gave specific incidents of these threats. Appellant's counsel also examined McKenney regarding these incidents. At the conclusion of this in-chamber examination, the judge sustained the Commonwealth's objection to disclosing the witness' address, and cross-examination of the witness was then continued in the court room.

*Alford v. United States*, 282 U.S. 687 (1931), and *Smith v. Illinois*, 390 U.S. 129 (1968), stand for the

proposition that there is a right to cross-examine a witness as to his home address and place of employment. "The purpose of the inquiry is to make known to the jury the setting in which to judge the character, veracity or bias of the witness." *United States v. Varelli*, 407 F. 2d 735, 749-750 (7th Cir. 1969). The right to cross-examine a witness as to his residence and place of employment is, however, limited. As Mr. Justice WHITE, with whom Mr. Justice MARSHALL joined, stated in his concurring opinion in *Smith* (390 U.S. at 133-134) : "In Alford v. United States, 282 U.S. 687, 694, 51 S. Ct. 218, 220, 75 L. Ed. 624 (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness. But in these situations, if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling. Here the State gave no reasons justifying the refusal to answer a quite usual and proper question. For this reason I join the Court's judgment and its opinion which, as I understand it, is not inconsistent with these views." Where there is a threat to the personal safety of the witness, the right to cross-examine the witness as to his address and place of employment is not absolute. *United States v. Palermo*, 410 F. 2d 468 (7th Cir. 1969). It was out of concern for the safety of the witness and his family that the trial judge limited cross-examination. This determination was correct. The record, moreover, establishes that McKenney was extensively cross-exam-

ined by the appellant, and although this factor is not of itself determinative of the issue raised, it does suggest that any prejudice to the appellant was minimal.

Appellant also complains that the sequestration order of the lower court was allegedly violated and, therefore, the court should have charged that the witness' alleged disobedience could be considered as affecting his credibility. While appellant brought to the court's attention the alleged violation when it occurred, he did not, however, submit a point for charge on this matter nor did he object to the omission of such a charge. Accordingly, we shall not now consider this argument for the first time. *Commonwealth v. Smith,* 227 Pa. Superior Ct. 355, 324 A. 2d 483 (1974).

Appellant's final assignment of alleged error is that it was prejudicial not to try him with his co-defendant, Jerome McKenney. Appellant claims he was prejudiced because he did not learn of the severance until the first day of trial, and McKenney was the Commonwealth's principal witness at the trial. The record, however, gives no indication that a joint trial was ever scheduled, nor were there ever any orders granting a severance. Furthermore, McKenney was the Commonwealth's main witness at the appellant's preliminary hearing. It was therefore no surprise to the appellant when McKenney was also the Commonwealth's principal witness at trial. In any event, the scheduling of the trial is generally a matter within the discretion of the Commonwealth subject to the supervisory power of the court. *Commonwealth v. McIntyre,* 417 Pa. 415 (1965) ; *Commonwealth v. Conard,* 206 Pa. Superior Ct. 33 (1965). We find no abuse of discretion in having separate trials for the appellant and his co-defendant.

Judgment of sentence affirmed.