376 A.2d 253

COMMONWEALTH of Pennsylvania

v.

**Thomas GRIFFITH, Appellant.**

Superior Court of Pennsylvania.

Submitted March 22, 1976.

Decided June 29, 1977.

John P. Gregg, Assistant Public Defender, Norristown, for appellant.

Milton O. Moss, District Attorney, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order denying relief under the Post Conviction Hearing Act.[1] On July 17, 1974, appellant was found guilty of sex crimes against his daughters, Debra Ann and Veronica. Appellant claims that his trial counsel was ineffective. The lower court declined to rule on this claim, holding that it had been waived.

–1–

█ Following sentencing, appellant filed his own direct appeal in this court. This was premature because appellant's trial counsel had not filed timely post-verdict motions. Accordingly, the lower court granted appellant leave to file such motions *nunc pro tunc*, and assigned new counsel (a Public Defender) to represent appellant. To enable the lower court to hear these motions, and by stipulation of counsel, this court then remanded the case on November 4, 1974. Post-trial counsel filed new motions on December 4; the lower court denied them on February 4, 1975. No further direct appeal was taken. Instead, on April 15 appellant filed a PCHA petition *pro se*, in which he raised for the first time the claim that trial counsel was ineffective.

The lower court reasoned that under *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975), trial counsel's ineffectiveness "could have been raised . . . on direct appeal," 19 P.S. § 1180–4(b)(1); that appellant's failure to appeal from the lower court's order denying the *nunc pro*

1. Act of Jan. 25, 1966, P.L. (1965) 1580, effective March 1, 1966, 19 P.S. §§ 1180–1 *et seq.* (Supp.1976).

*tunc* post-verdict motions raised a "rebuttable presumption that [his] failure to . . . raise [the] issue [was] a knowing and understanding failure," 19 P.S. § 1180–4(c); and that appellant had not overcome this presumption.[2]

■ The difficulty with the lower court's decision is that the claim of ineffectiveness could not have been raised on direct appeal from the court's order denying the *nunc pro tunc* post-verdict motions. This is so because the motions did not raise the claim of ineffectiveness.

[I]neffectiveness of prior counsel must be raised as an issue at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant. It follows then that when newly appointed post-trial counsel fails to assign the ineffectiveness of trial counsel as a ground for post-trial relief, the issue of trial counsel's ineffectiveness is not properly preserved for appellate review.

*Commonwealth v. Hubbard*, 472 Pa. 259, 276 n. 6, 372 A.2d 687, 695 n. 6 (1977).

Here, the order denying the motions was filed on February 4, 1975, which was eight days after *Dancer* was filed, on January 27. Under *Dancer*, a claim of ineffectiveness must be raised on direct appeal; but under *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), no claim may be raised on direct appeal unless it was first raised in post-verdict motions.

This is not to fault post-trial counsel for not raising the claim of ineffectiveness in the *nunc pro tunc* post-verdict motions. The motions were filed on December 4, 1974, which was about two months before *Dancer*; and before

2. Because one of appellant's ineffectiveness claims did not appear on the record, the lower court reached it. *Commonwealth v. Dancer*, 460 Pa. 95, 100, 331 A.2d 435, 438 (1975). Appellant alleged that trial counsel had failed to call a favorable witness, of whose existence appellant had informed counsel. The lower court found appellant's testimony on this point not credible, especially in light of appellant's failure to substantiate the allegation by producing either the witness or a letter containing the witness's offer to testify. Appellant has shown us no reason to disturb the lower court's finding.

*Dancer*, it was a common practice not to raise a claim of ineffectiveness in post-verdict motions, because some case law indicated that the claim would not be considered on direct appeal. *See Commonwealth v. Glasco*, 241 Pa.Super. 484, 496, 362 A.2d 420, 427 (1976); *Commonwealth v. Cimaszewski*, 234 Pa.Super. 299, 302, 339 A.2d 95, 98 (1975) (Concurring Opinion by Cercone, J.).

What post-trial counsel might have done, when *Dancer* was filed, was to return to the lower court and request leave to file further post-verdict motions *nunc pro tunc*, which would raise the claim of ineffectiveness, so that if the claim were thereafter denied by the lower court, counsel could argue it on appeal to this court. However, it is clear from the record that counsel was not aware that *Dancer* had been filed.

On February 11, 1975, post-trial counsel wrote appellant a letter, incorporated in the record of the PCHA proceedings, in which he said:

> If you now wish to appeal to the Superior Court, we are now procedurally in shape to do so [*i. e.*, the *nunc pro tunc* post-verdict motions had been denied]. However, we must appeal to the Superior Court within 30 days of February 4, 1975, the date of Judge Lowe's order [denying the post-verdict motions].
>
> While we are procedurally in order before the Superior Court, *I have great difficulty finding any trial errors which would justify a successful appeal.* I would appreciate it if you would advise me as to what grounds you want to base your appeal. These have to be more than the fact that the witnesses were not telling the truth. That decision was made by Judge Lowe[3] and will be upheld by the Superior Court.

(Emphasis supplied).

In fact, as will appear from the discussion of the merits *infra*, there were two quite glaring trial errors. Since neither had been presented to the lower court by trial

---

3. Appellant was tried before the judge sitting without jury.

counsel, they could be raised on appeal only under the guise of a claim of ineffective counsel. Thus we may infer from post-trial counsel's "difficulty [in] finding any trial errors" that he was not aware that it was now possible—indeed, to preserve the claim, it was necessary—to argue ineffectiveness of counsel on direct appeal. This inference is borne out by post-trial counsel's testimony at the PCHA hearing. Asked under what circumstances ineffectiveness of counsel had to be raised on direct appeal rather than by PCHA, he answered:

> . . . As a matter of fact, I think it's been within the last six months, as I understand, the Supreme Court directives that I am now obligated on direct appeal, where I or co-counsel, where I'm not involved at the trial level, I have to raise potential questions of incompetency of counsel. *Whereas, when I was involved with Mr. Griffith's case I don't believe that was the rule.*

N.T. PCHA at 49 (emphasis supplied).

 In the meantime, appellant was advised by "certain paralegal assistants at Graterford" (Appellant's Brief at 2; *see also* N.T. PCHA at 23, 30) to raise the ineffectiveness claim by a PCHA petition, which he did. A Public Defender was appointed to represent him on the petition. At this stage, the proper procedure would have been for PCHA counsel to do what post-trial counsel should have done, *i. e.,* ask leave to file post-verdict motions *nunc pro tunc* in order to preserve the ineffectiveness claim, and to reinstate appellant's appeal. He did not do this. Nor did he attempt to preserve the claim by alleging in an amended PCHA petition that post-trial counsel had been ineffective. (It is not surprising that PCHA counsel did not allege this, since he was from the same office as post-trial counsel. We have remarked before that appointment of counsel from the same office as preceding counsel whose effectiveness is—or, as in this case, may be—an issue is poor practice. *See Commonwealth v. Crowther,* 241 Pa.Super. 446, 361 A.2d 861 (1976).[4]

4. We should not be understood to hold that post-trial counsel was ineffective. For one thing, that has not been argued to us. For

█ Given these circumstances, we hold that appellant has shown "extraordinary circumstances," 19 P.S. § 1180–4(c), that justify his failure to raise the ineffectiveness claim by direct appeal from the lower court's order denying his *nunc pro tunc* post verdict motions. The Supreme Court reached the same conclusion in a similar case. *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976). There the appellant, after consulting with his trial counsel concerning his appellate rights, took no direct appeal but filed a PCHA petition alleging ineffectiveness of trial counsel. The Court declined to apply *Dancer*, reasoning that

> since trial counsel, who Mabie contends was ineffective, would have been required to file post verdict motions and a direct appeal on the issue of his own ineffectiveness were such procedures [*i. e.*, those prescribed in *Dancer*] initiated, it is . . . unrealistic to expect counsel to file motions and/or an appeal challenging his own effectiveness.

*Id.* 467 Pa. at 469, 359 A.2d at 371–72.

We see no material distinction between counsel who may not realistically be "expect[ed] to file motions and/or an appeal challenging his own effectiveness," as in *Mabie*, and post-trial counsel who does not know that he should raise trial counsel's ineffectiveness in post-verdict motions and on direct appeal, as here. Therefore, as the Supreme Court did in *Mabie*, we reach the merits of appellant's claim that trial counsel was ineffective.[5]

another, given the time of the denial of appellant's post-verdict motions in relation to the decision date in *Dancer*, it may be that post-trial counsel could not have known about *Dancer*. However, appellant may not be caught by a Catch-22: his post-trial counsel need not have known of *Dancer* and therefore was not ineffective, but appellant should nonetheless have presented his claims of ineffectiveness of trial counsel on direct appeal. "[I]t is unrealistic to expect a layman to ferret out instances of ineffectiveness without the assistance of counsel." *Commonwealth v. Strachan*, 460 Pa. 407, 410, 333 A.2d 790, 791 (1975).

5. We need not remand for a hearing on this claim. *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). Notwithstanding that the lower court held that appellant had waived the claim, the specific

–2–

Among the indictments on which appellant was found guilty were Indictment Numbers 521.2 and 521.3, which charged appellant with indecent assault on his daughter Veronica, "on or about November 1, 1973, and divers other times within two years last past," and involuntary deviate sexual intercourse with Veronica during the same period. These indictments were based on two complaints, which divided the incidents alleged into two groups: CR 1974–10 covered incidents alleged to have occurred between June 6 and November, 1973, and therefore chargeable under the Crimes Code; CR 1974–11 covered incidents alleged to have occurred between October, 1972, and June 6, 1973, and therefore chargeable under the Penal Code.

At appellant's preliminary hearing Veronica testified that nothing untoward had occurred between June 6 and November, 1973. The Commonwealth thereupon agreed with defense counsel's [6] motion that the charges in CR 1974–10 should be dismissed. N.T.P.H. 1/30/74 at 68. The District Justice ruled: "For the record, on Complaint number 10 the Commonwealth hasn't established a prima facie case, and the charges will be dismissed." *Id.* Despite these facts, the District Justice returned a Transcript in which he stated, *inter alia*, that a prima facie case had been established under Crimes Code Sections 3123 (involuntary deviate sexual intercourse) and 3126 (indecent assault), which were offenses charged in CR 1974–10. Thus, Indictment Numbers 521.2 and 521.3 were based on charges that had been dismissed.[7]

contentions comprised in the claim were fully explored at the PCHA hearing.

6. Appellant's counsel at the preliminary hearing was different from trial counsel.

7. It is possible that the indictments were also based on the charges under the Penal Code contained in CR 1974–11. The indictments used Crimes Code titles—"indecent assault" and "involuntary deviate sexual intercourse"—but we may assume *arguendo* that they were sufficiently specific to cover charges under the parallel Penal Code provisions, *viz.*, "assault and battery," 18 P.S. § 4708, and "sodomy," 18 P.S. § 4501. However, the trial court made it clear

■■■■ Given these facts, it is extraordinary that trial counsel did not move to quash the indictments. The seriousness of this omission is emphasized by the fact that appellant was sentenced to five to ten years on Indictment Number 521.3. We recognize that counsel will not be declared ineffective if there was any reasonable basis for the course he took. *Commonwealth v. Hubbard, supra,* 472 Pa. at 277, 372 A.2d at 695; *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). However, we are at a loss to find a reasonable basis. We can do no better than to quote the language of our Supreme Court in *Commonwealth v. Roundtree,* 469 Pa. 241, 250–251, 364 A.2d 1359, 1363–64, interpolating a reference to this case:

> It would be difficult to construct an argument which would bolster the position of the Commonwealth, that the failure to raise the issue of denial of speedy trial [*here* : the issue that the indictments were based on dismissed charges] . . . had any strategic foundation. Certainly counsel could have presented a pre-trial motion to quash the indictment . . . without jeopardizing either the success of his client's potential defenses or his chance of acquittal due to the Commonwealth's failure to present a case.

■■■ Furthermore, here, at the PCHA hearing, the Commonwealth elicited no testimony from trial counsel as to what his reasons—hard as they may be for us to imagine—might have been. Therefore we cannot conclude that "counsel made an informed choice, which at the time the decision was made reasonably could have been considered as advanc-

that it found appellant guilty only of the Crimes Code offenses, *i. e.,* the charges contained in CR 1974–10 rather than those contained in CR 1974–11:

> Let me make it clear that I am predicating these findings on the acts that took place subsequent to the enactment of the new code, on the effective date of it, which was in June of '73, or to put it another way I am bottoming these findings on events which took place in the fall of 1963, as testified to—
> [Defense Counsel] (interposing) '73, Your Honor.
> THE COURT: '73. I beg your pardon. '73.
> N.T. at 142.

ing and protecting the appellant's interest." *Commonwealth v. Roundtree, supra,* 469 Pa. at 249, 364 A.2d at 1363.

–3–

██ Appellant has advanced a second reason for a finding of ineffectiveness, based on *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973).[8] Appellant took the stand to testify that the incidents that had been described by Veronica, Debra Ann, and his wife, had never happened. On cross-examination there appears the following:

Q Were you convicted of any crimes?

A Yes.

Q And can you tell us what those crimes were?

A Arson.

Q And when were you convicted of that crime?

A 1962.

Q Can you tell us exactly what happened?

[Defense Counsel]: Objection.

THE COURT: Sustained.

By [District Attorney]:

Q Were your children in the house at the time of the arson?

[Defense Counsel]: Objection.

[District Attorney]: Your Honor, this goes to show his treatment toward his children.

[Defense Counsel]: Objection, Your Honor. That brings in a collateral case. We'll be trying a collateral case.

THE COURT: Yes. You can prove a prior crime only to impeach credibility.

8. As is evident from our earlier discussion, the claim of ineffectiveness based on the failure to move to quash certain of the indictments pertains only to appellant's convictions on charges of crimes against Veronica. The claim based on *Bighum* pertains to all convictions— those on charges of crimes against Debra Ann as well as those on charges of crimes against Veronica.

[District Attorney]: Well, Your Honor, I would like to be able to show this common plan, motive and scheme that this man—

THE COURT: (Interposing) Arson is in no way involved in the present case, so that it couldn't conceivably be part of a common plan, scheme, design or purpose.

[District Attorney]: Except that I'm trying to get to crimes against his children.

THE COURT: Well, I'm going to disallow it.

N.T. at 135–36.

As this portion of the transcript discloses, appellant's counsel did object quite effectively to certain aspects of the district attorney's line of questioning. Nevertheless, we are persuaded that counsel was ineffective in failing to ask that the entire line be barred under *Bighum.*

In *Bighum* the Supreme Court limited the use of prior convictions to impeach to crimes involving dishonesty or false statement, and further stated that even with respect to such crimes, four factors should be weighed: (1) the age and nature of the prior crimes; (2) the length of the criminal record; (3) the age and circumstances of the defendant; and (4) the extent to which it is more important to the search for truth in a particular case for the fact-finder to hear the defendant's story than to know of a prior conviction. Here, of these factors, several would have argued strongly for exclusion of the evidence of appellant's prior conviction. First, it might be questioned whether arson is a crime involving dishonesty. (It would seem that much would depend on the circumstances.) Second, the conviction was eleven years old. Third, the case amounted, at bottom, to a swearing contest between appellant and the complaining witnesses. (Appellant's wife testified that she observed some of the acts charged, but on cross-examination she virtually recanted her testimony.) Apart from two weak attempts at a circumstantial defense, appellant had "no other means [than his own testimony] by which to defend himself." It follows that had counsel made a *Bighum* motion, the ruling would likely have been that "it

would be particularly unjust to subject [appellant] to the introduction of prior convictions." *Commonwealth v. Bighum, supra* at 567, 307 A.2d at 263.[9]

■ When asked at the PCHA hearing why he had not made a *Bighum* motion, trial counsel responded:

I thought that being a case of a judge without a jury that that—put it this way, I have enough confidence in this Court to know when they can put things out of their mind, if that's humanly possible, and when they can't. That's something that I would have less confidence with the jury being able to do.

N.T. PCHA at 44.

This is not a "reasonable basis" for counsel's decision, for the simple reason that he never asked the court to put its knowledge of the prior conviction out of its mind. By a late objection he obtained exclusion of the details of the crime underlying the prior conviction; however, he did nothing to ensure that the trial judge would not consider the conviction in assessing appellant's credibility. In view of the judge's remark—"You can prove a prior crime only to impeach credibility"—we find that counsel's strategy cannot be deemed effective representation of appellant's interests.

The lower court's order denying post conviction relief is reversed, the judgment of sentence is vacated, and the matter is remanded for a new trial. Before commencement of the new trial, appellant's counsel shall be given the

9. Cross-examination of a defendant as to prior convictions is also prohibited by statute. Act of Mar. 15, 1911, P.L. 20, § 1, 19 P.S. § 711. This statute would have applied to appellant's case, since he had not attempted to prove his own good reputation or character. However, appellate counsel has not argued this point.

We note that a problem may arise in a case like the present, tried before a judge, as to how to handle a *Bighum* motion. If the trial judge hears the motion, weighs the factors listed in *Bighum*, and excludes the proffered evidence, he can hardly continue to sit as a fact-finder. The solution would appear to be to refer the motion to another judge. This was done in a case we decided recently. *See* the opinion of the lower court in *Comm. v. Miller*, (J. 50/76, filed April 29, 1977).

opportunity to take appropriate action on the validity of the indictments.

WATKINS, President Judge, and HOFFMAN, CERCONE and VAN der VOORT, JJ., concur in the result.