411 A.2d 537

**COMMONWEALTH of Pennsylvania**

v.

**Stanley Q. WEST, Appellant.**

Superior Court of Pennsylvania.

Argued June 4, 1979.

Filed Oct. 5, 1979.

Petition for Allowance of Appeal Denied March 21, 1980.

See also, 250 Pa.Super. 557, 378 A.2d 1289.

302

Charles R. Rosamilia, Jr., Specially Appointed Public Defender, Lock Haven, for appellant.

J. Michael Williamson, Specially Appointed District Attorney, Lock Haven, submitted a brief on behalf of Commonwealth, appellee.

Before PRICE, GATES * and DOWLING *, JJ.

DOWLING, Judge:

The appellant was originally indicted on fifty-four counts of unlawfully writing prescriptions in violation of § 13(a)(14) of The Controlled Substance, Drug, Device and Cosmetic Act of 1972, April 14, P.L. 233, No. 64 (35 P.S. § 780–113(a)(14)). On November 12, 1975, as the result of a negotiated plea, the appellant entered pleas of nolo contendere to Counts 2, 14, 26 and 47 in the aforesaid indictment and was subsequently sentenced in a manner consistent with the negotiated plea. By order of this court dated October 6, 1977, appellant was given leave to withdraw his nolo contendere pleas. *Commonwealth v. West*, 250 Pa.Super. 557, 378 A.2d 1289 (1977).

The Commonwealth at the time of the trial elected not to pursue the original fifty-four counts, and instead chose to try the appellant on the four counts to which he had previously pleaded nolo contendere. Following his conviction by a jury on all four counts, appellant filed applications

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by designation.

for post conviction relief, all of which were denied. Thereupon, appellant brought this appeal.

In acknowledgment of the thoroughness of the lower court's opinion, that opinion is adopted in large measure and its analysis is reflected in the discussion that follows:

■ At the trial it developed that the prosecution was a result of an investigation by two undercover narcotics agents. At various times beginning with January 29, 1975 and continuing through April 9, 1975, they appeared separately in the appellant's office and obtained written prescriptions from him, all of which formed separate prosecutions in the original fifty-four counts in the indictment. In most cases, the agents obtained a number of prescriptions on the same date. At the trial the Commonwealth was permitted, over objection, to introduce the testimony of the agents as to all of the prescriptions obtained during this time period. While generally the Commonwealth may not introduce evidence of other criminal activity in a prosecution for a separate offense, there are a number of applicable exceptions to the general rule of inadmissibility, on the authority of which the instant testimony was properly heard. The four prescriptions for which the appellant was tried were so interrelated to the other fifty prescriptions as to show a common scheme, plan, or design, in the commission of the offense. *Commonwealth v. Bastone*, 262 Pa.Super. 590, 396 A.2d 1327 (1978). Moreover, the appellant's state of mind, particularly his good faith in writing the illegal prescriptions, was an element of the offense charged. Accordingly, the Commonwealth was entitled to introduce evidence of other unlawful prescriptions written by appellant as part of the natural development of the facts. *Commonwealth v. Fishel*, 251 Pa.Super. 528, 380 A.2d 906 (1977).

■ Appellant's next contention involves an issue of statutory construction. Section 13(a)(14) of the Controlled Substance, Drug, Device and Cosmetic Act, 1972, April 14, P.L. 233, No. 64, Section 13, *as amended*, 35 P.S. § 780–113(a)(14) proscribes:

"The . . . prescription of any controlled substance by any practitioner . . . unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession."

Appellant challenges the constitutionality of this provision, claiming that it is void for vagueness in that it contains no ascertainable standard of conduct. *Commonwealth v. Mack*, 467 Pa. 613, 616–617, 359 A.2d 770, 772 (1976).

In construing statutes couched in similarly comprehensive language, this court has dealt with claims of impermissible vagueness as follows:

"[If t]he comprehensive words of the statute . . . convey concrete impressions to the ordinary person . . [then t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it." *Commonwealth v. Randall*, 183 Pa.Super. 603, 611, 133 A.2d 276, 280 (1957).

Applying these criteria, we are satisfied that the standards set forth in Section 13(a)(14) are easily understood by the community at large. Therefore, a physician who contemplates prescribing controlled substances should have little difficulty in deciding whether his intended course of conduct is violative of those standards.

Appellant also contends that the Act is unconstitutional in failing to specify whether the three standards for writing a prescription are in the disjunctive or the conjunctive. Ordinarily such a legislative miscue would result in construing the statute in favor of the appellant. If this route were followed, then the standards in § 13(a)(14) for writing a prescription would be considered to be disjunctive, and the Commonwealth would be required to prove that a practitioner violated all three standards before a conviction could be obtained. For example, so long as a practitioner

established a patient relationship with a person, he could legally write prescriptions in the utmost of bad faith and completely outside of any accepted medical treatment principles. Licensure as a physician would be tantamount to licensure as a dealer in drugs. Such a result would be absurd.

Moreover, the interpretation urged by appellant is inconsistent with the plain meaning of a related provision of the Controlled Substance Act, § 780–111(d):

"A practitioner may prescribe . . . only

". . . in good faith in the course of his professional practice, (ii) within the scope of the patient relationship, *and* (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession." (emphasis added).

The language of the above section discloses an obvious legislative intent that the positive mandates set forth therein are to be read in the conjunctive.

Accordingly, by construing § 11(d) and § 13(a)(14) together, we find that a practitioner can be convicted of a criminal offense under § 13(a)(14) of the Controlled Substance Act if the Commonwealth proves beyond a reasonable doubt that he wrote a prescription in violation of any one of the three standards recited in that section.

■ Appellant asserts two grounds for relief with regard to jury selection. Initially, he contends that he was denied effective assistance of counsel because of counsel's failure on voir dire to inquire whether any of the jurors or members of their family were patients of either of the two physicians which the Commonwealth was to call at trial as expert witnesses. While counsel did not make such an inquiry, this omission in and of itself does not require a finding that he was ineffective. An affirmative response to that question by any juror would not have required a challenge for cause absent an indication that the juror's physician-patient relationship would have caused him or her to have placed undue weight on the physician's testimony. In addition, an evalua-

tion of appellant's ineffective assistance of counsel argument cannot ignore the fact that any problems arising out of the jury selection process are attributable to the appellant's own inaction in engaging counsel. Appellant had ten weeks notice of the date for jury selection which is more than ample time to engage counsel. Nevertheless, he appeared without counsel which required the court to appoint a lawyer to represent him in the jury selection process. The omission of a particular voir dire question does not render that representation ineffective, especially if assessed as of the time of voir dire and in light of the circumstances then prevailing and not, as appellant would urge, by an improper retrospective analysis. *Commonwealth v. Nero*, 250 Pa.Super. 17, 23, 378 A.2d 430, 433 (1977).

Appellant also asserts ineffective assistance of counsel for failing to pursue the entrapment defense, notwithstanding the extensive use of undercover police in gathering the Commonwealth's evidence. A review of the record discloses that appellant's counsel fully explored the circumstances surrounding appellant's meeting with the undercover agents presumably in the hope of discovering some grounds for defending by arguing entrapment.

Having come up empty during cross-examination of the undercover agents, it cannot be said that counsel's decision to drop the entrapment defense in presenting his case-in-chief was without some reasonable basis designed to effectuate appellant's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Further, assuming arguendo that counsel was derelict in neglecting to exploit unperceived areas bearing on the possibility of entrapment, such error was rectified by the entrapment instruction given to the jury by the trial court.

Appellant next claims that the testimony of undercover agent Curoff, making reference to certain prior conduct and statements of the appellant, carried such severe prejudicial impact as to require a declaration of a mistrial. Agent Curoff testified to a conversation which occurred during his visit to appellant's office on April 1, 1975:

"I then asked the doctor for prescriptions for quaalude and eskatrol, and the doctor would not write me any prescriptions for quaalude because at that time he stated the persons in the waiting room were telling him about someone having had an accident and the person was allegedly on quaalude and had a prescription for quaalude in his pocket from Dr. West."

After initially overruling the appellant's objection, the court below resolved the matter by instructing the jury to disregard the testimony in question on the grounds of lack of relevancy. Assuming that the testimony was in fact inadmissible, any resulting prejudice to the appellant was mitigated, if not entirely erased, by the curative jury instructions as well as by the very length of the trial proceedings. Appellant's reliance upon this argument as grounds for a mistrial is misplaced. See, *Commonwealth v. Goosby*, 450 Pa. 609, 301 A.2d 673 (1973) (citing cases).

It is next argued that the trial judge erred in not recusing himself from appellant's trial because of his previous role in accepting appellant's nolo contendere pleas and thereafter imposing sentence. It is true that recusal may be appropriate where the trial judge is exposed to inflammatory evidence during pre-trial proceedings which would be incompetent at the subsequent trial. *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973). The appellant, however, was tried by a jury which exercised sole responsibility for evaluating the testimony and arriving at a verdict. Consequently, the integrity of the fact finding process was insulated from any predispositions held by the trial judge, who therefore was properly qualified to conduct appellant's trial. *Commonwealth v. Griffith*, 249 Pa.Super. 252, 266, 376 A.2d 253, 260 (1977) (footnote nine).

Finally, it is argued that the Commonwealth failed to establish that at the times the prescriptions were written the appellant was a "practitioner" within the meaning of the Controlled Substance Act and therefore subject to its provisions. In conjunction with this argument, appellant assigns

error to the lower court's instructions to the jury in defining the term "practitioner".

Section 780–102 of the Controlled Substance Act defines a practitioner to include:

". . . a physician, . . . or other person licensed, registered or otherwise permitted to distribute, dispense, . . . or to administer a controlled substance . . . in the course of professional practice . . . in the Commonwealth of Pennsylvania."

Appellant contends that his status as a licensed physician for this period is in question since his biennial registration with the Board of Medical Licensure had expired on December 31, 1974 because of his failure to send the proper documents and fees to the Board in a timely fashion. Subsequent to the commission of the offenses in 1975, the appellant did renew his registration with the Board. The Medical Practice Act of 1973 provides for both the licensing and the registering of physicians. It is clear from the Act that these are separate Board functions. While the aforesaid Act does provide that a physician must register with the Board every two years, it does not provide that a physician automatically loses his license if he fails to register and pay the required fees in a timely manner.

There is little official guidance to assist in resolving the technicalities raised concerning appellant's status as a practitioner. Generally, it can be observed that the issuance of a license to a physician is a bestowal of the authority to practice medicine within the community. Such a person has access to the use and distribution of drugs and medicines. The legislative enactment of § 13(a)(14) is an expression of legislative intent to prohibit physician abuse in administering controlled substances under the guise of practicing medicine. In the present case, the Commonwealth presented evidence to show that the unlawful prescriptions were obtained in the office of the appellant who was a licensed physician purporting to write prescriptions in his professional capacity. These were not street transactions, nor were they part of an otherwise clandestine operation. The evil

which the legislature sought to prevent by enactment of § 13(a)(14) is precisely what occurred in this case, and the appellant's status as a practitioner in perpetrating the offenses is more than evident.

Accordingly, we conclude that the Defendant was a licensed physician during the period of January, 1975 through April, 1975 for purposes of the present prosecution.

The judgment of sentence is affirmed.

GATES, J., files a concurring opinion.

GATES, Judge, concurring:

I concur in the result reached by the majority, however, it is my view that appellant's constitutional challenge to Section 13(a)(14) of the Controlled Substance, Drug, Device and Cosmetic Act [1] has not been properly preserved for appellate review and is therefore waived. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

The proper procedure for challenging the validity of a criminal statute is to file a pretrial motion to quash the indictment. Obviously, the purpose of resolving constitutional challenges prior to trial is to conserve time and expense if the challenge is successful. Ofttimes pretrial applications not only to quash but to suppress evidence, when successful, avoid the necessity for a trial. Thus it is imperative that these matters be presented in accordance with the pretrial rules.

Furthermore, former Pennsylvania Rule of Criminal Procedure 304 (replaced by Rule 306, effective January 1, 1978) provides that:

> "All pretrial applications for relief shall be in writing . . . ."

The reason for requiring a written motion is to ensure that the Commonwealth, trial, and appellate courts know the precise contentions raised so that they may respond with a

---

1. Act of April 14, 1972, P.L. 233, No. 64, § 13, as amended, 35 P.S. § 780–113(a)(14).

focused argument and decision. The Supreme Court in *Commonwealth v. Keefer*, 470 Pa. 142, 367 A.2d 1082 (1976), indicated that the requirements of Rule 304 will not be insisted upon rigorously for the purpose of appellate review if an issue is clearly framed below, however, this dicta does not preclude our Court from finding a waiver instantly. I believe our recent decision in *Commonwealth v. Hall*, 267 Pa.Super. 204, 406 A.2d 765 (1979) is controlling. In *Hall* we held that a Rule 1100 claim was not preserved since it was presented orally in a cursory manner and not in writing as Rule 306 clearly required. A fortiori, when a defendant fails to file a written pretrial motion challenging a statute as unconstitutionally vague or raise the issue before or at trial orally, but presents the issue for the first time in written post-trial motions, he has not adequately preserved the claim for appellate review. See *Commonwealth v. Webb*, 254 Pa.Super. 429, 386 A.2d 25 (1978).

I would find that appellant waived his vagueness challenge to the statute in question. This result is mandated by Rule 306 and appellant should be required to comply in order to preserve his claim, otherwise the rules will be rendered meaningless.