420 A.2d 1071

**COMMONWEALTH of Pennsylvania**

v.

**William R. DARUSH, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed May 30, 1980.

Reargument Denied Aug. 4, 1980.

William A. Hebe, Wellsboro, for appellant.

Thur W. Young, District Attorney, Coudersport, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

HESTER, Judge:

Following a jury trial, appellant William R. Darush was found guilty of burglary, theft, receiving stolen property, and conspiracy,[1] in the Court of Common Pleas, Potter County. Post trial motions were argued and denied and a sentence of 2½ to 5 years imprisonment was imposed followed by three years probation. As a condition of probation, appellant was ordered to make restitution to the victim. On this appeal, appellant posits several issues for our review, all of which we find without merit.

Pertinent facts surrounding the crime were as follows. The chief witness for the Commonwealth was appellant's accomplice, Randall Lee Cornelius. His testimony established that one evening during the last week of January, 1975, appellant asked Cornelius to accompany him for a ride: " 'Go with me and I'll make it worth your time' ". R.R. 69a. Cornelius agreed and the two drove in Cornelius' car to the residence of Jane Baxter, appellant's mother–in–law, the complainant herein. Appellant had told Cornelius on another occasion that there was a "considerable amount of money" in the Baxter residence. When they arrived at the house in Courdersport, Pennsylvania, Cornelius waited in the car behind the garage while appellant entered the house through a rear door. Presently, appellant returned carrying a heavy metal container which he placed in the car trunk, and the two then drove away. Later that night, in Corneli-

1. Crimes Code, 18 Pa.C.S.A. § 3502, 3921, 3925, 903, respectively.

us' barn, appellant opened the box with a sledge hammer, and, after sifting through insurance policies, stocks and the like, retrieved a large bundle of cash, a portion of which he gave to Cornelius, while keeping the rest to himself. Cornelius later dumped the box and its remaining contents into the river.

Other evidence adduced by the Commonwealth established that appellant was well aware of the box's existence and its contents, knew where it was kept, and was in need of cash at that time. For example, it was shown that in the summer or fall of 1974, appellant and his fianceé Leslie Baxter were contemplating the purchase and restoration of the Deer Path Inn, a restaurant and bar in Roulette, then owned by appellant's family. Leslie's mother, Jane Baxter, wishing to help her daughter and future son–in–law, offered to loan them $10,000 for the project, interest free. At a conversation occurring in her kitchen, Mrs. Baxter showed appellant the metal container and withdrew therefrom $10,-000 in cash, offering it to appellant. He declined the loan. Appellant and Leslie were married a short time afterward and eventually purchased the Deer Path Inn, with Leslie doing some of the bookwork for the business. In early January, 1975, after a short stay in the hospital, Leslie became aware that the Inn was in financial trouble when she was unable to pay the bills because of insufficient funds in the checking account. Through Mrs. Baxter, the Commonwealth established that the metal box was taken sometime between January 25 and 31, 1975, when she was not at home. It was also shown that appellant was a frequent guest at the Baxter house, and was familiar with the upstairs area where the box and money were kept.

Appellant, testifying in his own behalf, denied all charges and insisted that Cornelius' damaging testimony was prompted by the latter's belief that appellant had once had an affair with Cornelius' wife. Trial commenced before the Honorable Harold B. Fink and a jury on August 18, 1978. Verdicts were returned the same day.

■ Appellant first assigns as error the failure of Judge Fink to disqualify himself because of the judge's role as a prosecutor in a previous criminal action against appellant. In 1976, appellant was tried and convicted in two separate trials for violations of the Uniform Firearms Act. It appears that Judge Fink, then the district attorney for Potter County, personally prosecuted one of the trials, while an assistant district attorney prosecuted the other. Later, Judge Fink, again as district attorney, argued the consolidated appeals before this Court.[2] Appellant concedes that the issues and facts in the 1976 trials and appeal are not in any way related to the instant proceedings, but argues that Judge Fink is *ipso facto* disqualified from presiding at the trial because of his former role in prosecuting this appellant. With such a broad proposition we cannot agree.

■ As a general principle, the trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case, or whenever he believes his impartiality can reasonably be questioned. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976); ABA Standards Relating to the Function of the Trial Judge, § 1.7; Code of Judicial Conduct, Canon 3(c)(1). The most obvious cases are those where the trial judge has a pecuniary interest in the controversy or a consanguinal relationship or close affinity to a party. Cf. *Perry* at 524–5, 368 A.2d at 317; *Commonwealth ex rel. Armor v. Armor*, 263 Pa.Super. 353, 398 A.2d 173 (1978). The issue of recusal has also frequently arisen where the trial court, sitting without a jury, has become aware of some prejudicial or inflammatory information about the accused which would not otherwise be admissible at trial. See, e. g., *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978); *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973); *Commonwealth v. Lee*, 262 Pa.Super. 280, 396 A.2d 755 (1978); *Commonwealth v. Jones*, 259 Pa.Super. 103, 393 A.2d 737 (1978); *Commonwealth v. Griffith*, 249 Pa.Super. 252, 376 A.2d 253 (1977); *Common-*

2. See, *Commonwealth v. Darush*, 256 Pa.Super. 344, 389 A.2d 1156 (1978), reversing both convictions.

*wealth v. Fields*, 231 Pa.Super. 238, 331 A.2d 494 (1974); *Commonwealth v. Conti*, 236 Pa.Super. 488, 345 A.2d 238 (1975); *Commonwealth v. Rivers*, 218 Pa.Super. 184, 279 A.2d 766 (1971). Similarly, our Courts have held that the appearance of judicial integrity and impartiality mandates that a judge who has represented a party or participated as a lawyer in the proceedings should remove himself from further participation in that case. Thus, the district attorney who prosecuted or was responsible for the prosecution of a defendant cannot later sit on the en banc post–verdict court, *Commonwealth v. Pavkovich*, 444 Pa. 530, 283 A.2d 295 (1971), nor should he sit as the PCHA or habeas corpus judge in that same case, *Commonwealth v. Young*, 439 Pa. 498, 269 A.2d 18 (1970); *Commonwealth ex rel. Allen v. Rundle*, 410 Pa. 599, 189 A.2d 261 (1963). See also, *Commonwealth v. Parrish*, 250 Pa.Super. 176, 378 A.2d 884 (1977). We have never held, however, that simply because a judge had previously prosecuted or participated in the prosecution of a defendant that he is for all time precluded in future unrelated cases from sitting as a judge. The cases in other jurisdictions are in accord that the fact that the trial judge prosecuted the defendant for other offenses while he was district attorney is not, in and of itself, ground for disqualification. See, *In Re Grand Jury Investigation*, 486 F.2d 1013 (3 Cir., 1973); *Gravenmier v. U. S.*, 469 F.2d 66 (9 Cir., 1972); *U. S. ex rel. Fletcher v. Maroney*, 280 F.Supp. 277, W.D.Pa., 1968); *State v. Maduell*, 326 So.2d 820 (La., 1976); *Satterlee v. State*, 549 P.2d 104 (Okl.Cr., 1976); *Sam v. State*, 510 P.2d 978 (Okl.Cr., 1973); *People v. Tartaglia*, 73 Misc.2d 506, 342 N.Y.S.2d 998 (1973); *Maloney v. Maxwell*, 174 Ohio St. 84, 186 N.E.2d 728 (1962). "It is of course well settled that the mere fact that the trial judge personally prosecuted the [defendant] in past crimes does not disqualify him from presiding over a trial where a new offense is charged." *Hathorne v. State*, 459 S.W.2d 826, 829 (Tex.Cr., 1970); Anno. 72 A.L.R.2d 443; 21 Am.Jur.2d, Judges, § 197. Thus, the common thread running through the Courts' decisions in *Allen, Pavkovich, Young,* and *Parrish* is that recusal will be required only when the judge is asked to hear the *same case*

in which he, at some prior stage, served as counsel for a party, or more particularly, where he was the prosecutor. See, *In Re Grand Jury Investigation*, supra, 486 F.2d at 1015 (3 Cir., 1973). Indeed, the Code of Judicial Conduct would require no more: "A judge should disqualify himself in a proceeding in which . . . (b) he served as lawyer *in the matter in controversy.*" Canon 3(c)(1) (emphasis added).

Since, in the instant case, the former prosecution of appellant under the Uniform Firearms Act was completely unrelated to, did not in any sense involve, the present prosecution, we must reject appellant's claim that the trial judge was disqualified merely because he was a former prosecutor. Our inquiry does not end here, however, because appellant may still show the presence of *actual* prejudice stemming from the judge's role as a prosecutor, despite the absence of presumed prejudice. cf. *Perry*, supra, at 526, 364 A.2d at 318. The lower court did provide appellant and counsel this opportunity. At the pre–trial hearing, appellant failed to address himself to this narrow issue, but rather dwelt briefly upon the recent judicial election in which the trial court had been elevated to the bench. It seems appellant had openly opposed Judge Fink's election and had made unspecified derogatory remarks to Judge Fink's campaign manager, which remarks appellant was sure the judge had overheard. Further, appellant charged that Judge Fink as an attorney had once said to someone, "We want to get people like him [referring to appellant] out of Potter County." R.R. 16a. Appellant did not specify times or places as to either of these events and admitted that the alleged statement by Judge Fink was hearsay. At the conclusion of the hearing and in the post verdict opinion, the court stated it had no recollection of ever making any such disparaging remarks about appellant or of overhearing statements by appellant to the campaign manager.

The party who asserts that the trial judge should be disqualified bears the burden of producing evidence establishing the bias, prejudice, or unfairness necessitating recusal. *Perry*, supra; *Commonwealth v. McQuaid*, 273 Pa.Su-

per. 600, 417 A.2d 1210 (1980); *Commonwealth v. Conrad*,
241 Pa.Super. 324, 361 A.2d 421 (1976). A failure to adduce
such competent evidence will result in a denial of that
motion. *Commonwealth v. Martin*, 262 Pa.Super. 113, 396
A.2d 671 (1978); compare, *Commonwealth v. Schwartz*, 267
Pa.Super. 170, 406 A.2d 573 (1979). "[I]f the trial judge
feels able to hear and dispose of the case fairly and without
prejudice, the decision not to withdraw will not ordinarily be
reversed on appeal." *Conrad*, 241 Pa.Super. at 328, 361 A.2d
at 422. In the instant case, we do not think the vague,
unsubstantiated, hearsay nature of appellant's brief refer-
ences to the election dispute establish bias or prejudice on
the part of the trial judge. Judge Fink stated on the record
that he did not recall saying or hearing such remarks and
assured appellant that he would receive "a very fair trial
certainly as far as this Court is concerned." R.R. 7. See, e.
g. *Commonwealth v. Hooks*, 483 Pa. 40, 394 A.2d 528 (1978)
(lower court stated it did not hear prejudicial remarks and
could not recall the incident); *Schwartz*, supra. Moreover,
the trier of fact was the jury, not Judge Fink, a factor we
have emphasized previously in deciding whether recusal was
required. *Commonwealth v. West*, 270 Pa.Super. 301, 411
A.2d 537 (1979); *Commonwealth v. Pettiford*, 265 Pa.Super.
466, 402 A.2d 532 (1979); *Conrad*, supra. We thus conclude
the motion for recusal was properly denied.

Appellant next contends the court erred in admitting the
privileged testimony of his former wife Leslie Darush. On
direct examination, Leslie testified for the Commonwealth,
over defense objection, that she "probably" discussed with
her husband the fact that her mother, the complainant,
would not be at home on two evenings during the last week
of January, 1975. She further stated, again over defense
objection, that, as the bookkeeper of the Deer Path Inn, she
became aware of the Inn's financial troubles in early Janu-
ary, 1975. Appellant argues that both of these portions of
Leslie's testimony were privileged and inadmissible.

In *Commonwealth v. Wilkes*, 414 Pa. 246, 251, 199
A.2d 411, 413 (1964), the Supreme Court summarized the
controlling principles of the husband–wife privilege:

With certain exceptions not relevant here, either spouse is prohibited from giving testimony in any form against the other: *Kerr v. Clements*, 148 Pa.Super. 378, 25 A.2d 737 (1942). Confidential communications between them and facts which have come to their knowledge through the marital relationship cannot be divulged by either without the consent of the other. However, if knowledge thereof is not gained through the relationship and in the confidence which that relationship inspires, it is not privileged: *Seitz v. Seitz*, 170 Pa. 71, 32 A. 578 (1895). . . . The prohibition against the giving of testimony by one married party against the other is based upon consideration for preserving domestic peace, harmony and the sanctity of the marriage.

See also, *Commonwealth v. Galloway*, 271 Pa.Super. 305, 413 A.2d 418 (1979); *Commonwealth v. Hess*, 270 Pa.Super. 501, 411 A.2d 830 (1979). In order to come within the rule, it is essential that the communication has been made in confidence and with the intention that it not be divulged. Therefore, whether a particular communication is privileged depends upon its nature and character and the circumstances under which it was said. 2 Henry, Pa. Evidence, (4th Ed., 1953) § 699; III Freedman, Law of Marriage and Divorce in Pa., (2d Ed., 1957) § 751; *Commonwealth v. Robinson*, 468 Pa. 575, 585–586, 364 A.2d 665, 671–2 (1976); *Commonwealth v. Rough*, 275 Pa.Super. 50, 418 A.2d 605 (1980). Further, the confidentiality of these communications survives death or divorce of the parties.[3] *Commonwealth v. Borris*, 247 Pa.Super. 260, 372 A.2d 451 (1977); *Hunter v. Hunter*, 169 Pa.Super. 498, 83 A.2d 401 (1951). The marital privilege in criminal proceedings is codified in this Commonwealth. Judicial Code, 42 Pa. C.S.A. § 5914.

▄▄▄ Taking appellant's two challenges to his wife's testimony in reverse order, it is clear that Leslie's knowledge of the Deer Path Inn's financial woes came about not because

---

**3.** Thus, the fact that appellant was divorced from his wife in 1976 does not vitiate the privilege extending to all confidential communications during their marriage.

of her coverture but because she was the business' bookkeeper. Generally, knowledge or communications between husband and wife as to matters of business or property are not privileged in the absence of contrary indications. Henry, supra; 81 Am.Jur.2d, Witnesses, § 164. We thus find that knowledge gleaned from Leslie's role as the bookkeeper is not embraced by the privilege where nothing indicates such information was to be confidential. Indeed, appellant himself testified as to the financial shape of the business during the time in question. R.R. 128a–129a. We could hardly hold Leslie's testimony inadmissible when appellant proffered evidence bearing on the same subject matter. Similarly, we do not think the fact of Mrs. Baxter's absence from home for two nights during January, 1975 can properly be labelled a "confidential communication" from Leslie to her husband. It appears that Mrs. Baxter was on the board of the American Cancer Society, which was to show an important film those two evenings dealing with breast cancer. The limited running of the film was publicized in the area and Mrs. Baxter, a registered nurse, was asked to give a commentary thereon. R.R. 46a–47a. "The marital privilege does not extend to all the ordinary daily exchanges between the spouses, but only to those which would not have been made except for the absolute confidence of the marital relationship." 81 Am.Jur.2d Witnesses, § 154; McCormick on Evidence, (2d Ed., 1972) § 80; Rough, supra. The showing of the film, Mrs. Baxter's participation in the Society, and her attendance at the film as a featured speaker were all apparently known within the small community. It was a public event. The communication of these facts to appellant by his wife could thus hardly have been given in the "absolute confidence" of their marriage with the intent never to divulge. There was no error.

■■■■ Appellant next challenges the sufficiency of the court's charge as it bore on the testimony of the accomplice Randall Cornelius. We have carefully examined the "accomplice" charge given by the court and find that it com-

ports in all respects with language approved in prior cases.[4]
See, *Commonwealth v. Coades,* 454 Pa. 448, 311 A.2d 896
(1973); *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428
(1969); *Commonwealth v. Gordon,* 254 Pa.Super. 267, 385
A.2d 1013 (1978); *Commonwealth v. Vorhauer,* 232 Pa.Su-
per. 84, 331 A.2d 815 (1974). At the conclusion of the court's
charge, counsel requested only that the court instruct on the
"corrupt and wicked motive" of an accomplice to testify
falsely. First of all, we rejected a similar contention in
*Vorhauer,* supra, where we held it was not error for the
court to refuse to explain to the jury an accomplice's possi-
ble motives for testifying, relying on *Commonwealth v.
Bubna,* 357 Pa. 51, 53 A.2d 104 (1947). Second, our review of
the court's charge reveals that it *did* instruct the jury that
Cornelius, as an accomplice, may wish to "blame others."
Finally, it is well settled that the form of the "accomplice"
charge rests within the trial court's discretion and need not
contain the exact language of the requested charge. *Com-
monwealth v. Rhodes,* 250 Pa.Super. 210, 378 A.2d 901
(1977); *Commonwealth v. Griffin,* 216 Pa.Super. 410, 268

4. The court charged in pertinent part:

"Now experience shows that after being caught in the commis-
sion of a crime, a person may falsely blame others because of some
tainted motive. On the other hand, such a person may tell the
truth about how he or others committed the crime together. In
deciding whether or not to believe Randy Cornelius, you should be
guided by the following principles which apply specially to his
testimony.

First, the testimony of Randy Cornelius as an accomplice should
be looked upon with disfavor because it comes from a tainted
source. You should examine Randy Cornelius' testimony closely
and accept it only with caution and care. You should consider
whether Randy's testimony that the defendant committed the
crime is supported in whole or in part by evidence other than
Randy's testimony. For if it is supported by independent evidence,
it is more dependable. You may find the defendant guilty based on
Randy Cornelius' testimony alone, and even though it is not sup-
ported by any independent evidence. And so to summarize, even
though you decide Randy Cornelius is an accomplice, his testimony
standing alone is sufficient evidence on which to find the defendant
guilty, if after following the foregoing principles you are convinced
beyond a reasonable doubt that his testimony is truthful that the
defendant committed the crime." R.R. 145a–146a.

A.2d 129 (1970). Aside from minor word changes, the instruction given was in substantial accord with appellant's requested points for charge.

■ Appellant next assigns as error the failure of the court to swear the jury immediately after it was chosen. It appears that the jury members were impaneled on August 7, 1978, but were not actually sworn until August 18, 1978, the day of trial. Appellant directs us to no authority, and our research has disclosed none, requiring the jury to be sworn immediately after it is chosen.[5] "In the absence of statute, the time for swearing jurors in chief after they have been examined and opportunity given for challenge is within the discretion of the court." 50 C.J.S. Juries § 294b. Before swearing the jury on August 18, the court inquired whether any had become aware of facts or engaged in any discussion which would disallow them from sitting fairly and impartially. None responded, and appellant's counsel made no attempt to inquire of any other possible prejudice stemming from the delay. R.R. 24a. In the absence of any actual prejudice, we do not believe the procedure followed to be improper. Compare, *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973).

■ Appellant's averment that the court improperly admonished counsel in front of the jury we find completely without merit and adequately answered in Judge Fink's lengthy opinion below. Appellant's argument that the Statute of Limitations bars the trial for several of the charges, 18 Pa. C.S.A. § 108(b)(2), was not raised until counsel orally posited this issue on the day of trial. We thus agree with the court below that the claim was untimely, not properly before the court, and therefore waived. Pa.R.Crim.P. 306, 307.

5. ˉ Pa.R.Crim.P. 1110 provides:
(a) After all jurors have been selected, the jury, including any alternates, shall be sworn as a body to hear the cause.

 Appellant lastly contends that the court failed to sufficiently articulate the reasons for the sentence imposed, as required by *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). The court noted it was considering a variety of factors in imposing sentence: appellant's several unsuccessful marriages; his cohabitation with a woman not his wife; his lack of a prior criminal record withstanding appellate review; and an attitude which seems to flaunt the law. The court further noted the seriousness of the offense; the fact that the victim was a relative of whom appellant took advantage; the manner of entry into the Baxter home; and the high value of property taken in the burglary. R.R. 171a–172a. We are thus satisfied the court carefully considered the character of the appellant and the particular circumstances of the offense. *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976); *Commonwealth v. Bolyard*, 256 Pa.Super. 57, 389 A.2d 598 (1978); *Commonwealth v. Mathis*, 269 Pa.Super. 61, 409 A.2d 63 (1979). Further, the court was furnished with a pre–sentence report, the contents of which appellant and counsel found to be accurate. Pa.R.Crim.P. 1403. The fact that the court made no specific reference to the Sentencing Code, 18 Pa. C.S.A. § 1301 et seq., is not fatal to the proceeding so long as it is clear that the court did consider and apply those guidelines. *Commonwealth v. Roberts*, 263 Pa.Super. 237, 397 A.2d 1187 (1978); *Commonwealth v. Wareham*, 259 Pa.Super. 527, 393 A.2d 951 (1978). The court here was most concerned with the seriousness of the offense in terms of degree and the amount of property involved. 18 Pa. C.S.A. § 1325(3). Moreover, we cannot agree that the order of restitution, as a condition of probation, was improper. The Supreme Court has specifically upheld the ordering of restitution as a "term and condition" of probation. *Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179 (1979). We thus conclude the sentence was proper and not manifestly excessive.

Judgment of sentence affirmed.

SPAETH, J., concurs in the result.