370 A.2d 697

**COMMONWEALTH of Pennsylvania**

v.

**Robert Scott SHADRON, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1976.

Decided Feb. 28, 1977.

462

James E. McLaughlin, Pittsburgh, for appellant.

Albert M. Nichols, Dist. Atty., Louis H. Ceraso, James J. Conte, Asst. Dist. Attys., Greensburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice:

Appellant Robert Scott Shadron was convicted by a jury of murder in the first degree for the death by stabbing of one Paul Clark Bennett. Post-trial motions were denied and Shadron was sentenced to life imprisonment. On this appeal, he urges reversal of his conviction on the

grounds that certain evidence should have been suppressed and that a new trial should have been awarded because of failure of the court to charge on the felony involved in a felony-murder.[1] Finding the latter claim to be meritorious, we will reverse.

## I

Appellant's first assignment of error is that the facts of this case show a clear violation of the so-called Posse Comitatus Act, 18 U.S.C. § 1385[2] and that evidence procured as a result of the search of his barracks should therefore be suppressed. Because this issue, one of first impression in this state, will necessarily remain in the case notwithstanding a new trial unless it is now disposed of, we proceed to address it.

The Act in question is a federal statute of longstanding, 18 U.S.C. § 1385. It provides:

"[W]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both."

The facts relevant to this issue are as follows:

The body of one Paul Bennett was discovered at his home in Westmoreland County on March 14, 1973. As a result of the investigation into the circumstances surrounding Bennett's death, two Pennsylvania law enforcement officers, Sergeant Packler and Detective Cole, de-

1. This court has jurisdiction under the Appellate Court Jurisdiction Act of 1970, Act of July, 1970, P.L. 673, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976–77).

2. "Posse Comitatus" means the "power or force of the county. The entire population above the age of 15 which a sheriff may summon to his assistance in certain cases; as to aid him in keeping the peace, in pursuing and arresting felons, etc. *Commonwealth v. Martin*, 7 Pa.Dist.C. 219, 224". Black's Law Dictionary 1324 (rev'd. 4 ed. 1968).

cided to interview Robert Shadron, who was then at his post on Sheppard Air Force Base in Wichita Falls, Texas. The Pennsylvania officers contacted the base on March 15 and requested the military personnel in charge to have Shadron available for questioning the next day. On arrival at the Wichita Falls Airport, Cole and Packler were picked up by a military vehicle and taken to the security headquarters of the base where Shadron and some Air Force military policemen were awaiting them in an interrogation room. At that time, as the suppression court later found, the appellant was fully advised of the offense of which he was suspected and was given the constitutional warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There is no contention that the Air Force police participated in the questioning that followed the warnings.

■ After a short period of fruitless questioning, Detective Cole asked the appellant for permission to search his barracks room, at the same time advising him that he had the right to refuse this consent. Shadron orally consented and later signed a written consent form which had been provided by the Air Force personnel. Before signing this form, which named one Sergeant Ritchie as the person authorized to conduct the search, appellant was told by an Air Force colonel that, if he did not give the written consent, a search warrant authorizing the search could nevertheless be procured.[3] The search of

3.  Shadron asserts that the consent which he gave to the search of his room was not freely and voluntarily given, and that the suppression court erred in not so finding. He points to the fact that a Colonel Marsano of the Air Force legal department, who was present throughout the questioning at Sheppard Air Force Base, advised appellant before he signed the consent form that a search warrant could be obtained if he did not consent. Shadron also characterizes as deceit and misrepresentation the failure of any of the civilian or military officers present to inform him that the Pennsylvania investigators had no authority in Texas, that certain procedures would be required to obtain a warrant and that the participation of the military police in the proceedings was illegal.

Shadron's room was conducted by the Pennsylvania officers with the help of several servicemen. In the course of the search, Detective Cole found a knife with a stain on the blade which appeared to be blood. When confronted with the knife, Shadron fainted. Shadron was then taken to the base hospital, from which he was released the next day. The day following his release, he was returned to Pennsylvania in the custody of the Pennsylvania officers.

In response to appellant's argument based on the posse comitatus statute, the Commonwealth makes two points. First, there is no violation of the statute where the defendant was himself in the military and where only the military police at his own base were in any way involved in the investigation;[4] the military police have an independent law enforcement function on base and should not be found in violation of the statute where their actions are within the scope of that function. Second, even if the statute were violated, the violation would not justify suppression of otherwise admissible evidence; the defendant should not be permitted to invoke a criminal statute intended for the benefit of the citizens of the community in order to create in himself a personal right to be immune from questioning at a military base.

> There is no need to consider the merits of appellant's claim that the police officers had a duty to inform him of these matters before obtaining his consent to search; the argument overlooks the fact that Colonel Marsano did not make his comment as to the availability of a search warrant until *after* Shadron had already orally consented to the search. There is nothing in the record to support an inference that Shadron had wished to withdraw his consent before he signed the written form, and there is thus no basis for the assertion that his decision to sign was in any way influenced by the Colonel's remark. As for the oral consent to the search, an examination of the totality of the circumstances surrounding the consent satisfied the suppression court that it had been freely and voluntarily given. *Commonwealth v. Mamon,* 449 Pa. 249, 255–56, 297 A.2d 471 (1972); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973).

4. *Burns v. State,* 473 S.W.2d 19 (Tex.Cr.App.1971).

■ We do not consider the conduct of any of the officers involved in the early investigation of this case, either state or federal, as having been in violation of the act of Congress. That investigation had sharply focused on Shadron as a suspect. As a member of the armed forces, he had returned to his military base, a location where Pennsylvania police could not intrude without permission. The record shows that the assistance rendered by the military officers to the Pennsylvania police consisted of making Shadron available for questioning, supplying a room for that purpose, and cooperating in the search of appellant's quarters.[5] These were but normal courtesies which officers in the nation's military establishment might be expected to extend to state officials in the circumstances. It would be a perversion of the purpose of the posse comitatus statute to hold that the Army or Air Force (or other branches of the armed forces) is a sanctuary which insulates a suspect from investigation for a state crime.[6]

---

5. In support of its holding that "the Federal 'posse comitatus' Act is not applicable to this situation," the trial court observed:
   "The law enforcement officers from Westmoreland County, Pennsylvania, conducted the investigation, the advising of rights, the interrogation, the search. The military people merely supplied the place and of course made the defendant available to the Pennsylvania Police upon their request. The record is devoid of any testimony indicating that the military did anything directly relating the occurrences there other than supplying a form for the defendant to sign consenting to the search of his room and a Colonel Marsano telling the defendant, after the defendant had orally agreed to a search of his room, that he might as well sign the written consent to a search because the authorities could get a search warrant anyways [sic]. It is true military personnel were present at all times but they did not conduct any of the crucial happenings . . ." Opinion of the court en banc at 5–6.

6. Because we conclude that no violation of the posse comitatus act occurred in this case, we need not consider the Commonwealth's second contention, viz., whether an exclusionary rule applies to evidence seized in violation of the statute. For cases which have dealt with this issue, see, e. g., *United States v. Walden*, 490 F.2d 372 (4th Cir. 1974); *State v. Danko*, 219 Kan. 490, 548 P.2d 819 (1976).

## II

The other argument advanced by Shadron is that a new trial is required because the trial court failed to charge the jury on the elements of either burglary or robbery, the two felonies commission of which would justify a verdict of murder in the first degree in this case on the felony murder theory.[7] The trial judge charged the jury that they could find the defendant guilty of murder in the first degree on either of the bases for that crime: (1) murder committed willfully, deliberately and with premeditation or by poison or lying in wait, or (2) a homicide committed in the course of committing robbery or burglary.[8] At no point in the charge did the court attempt to define *either* crime. Its opinion in support of denial of post-trial motions the court en banc gives this explanation:

"In the present day with the frequent occurrence of both of these crimes it would be mere technical verbiage to define for a jury the legal components of burglary and robbery."

Because the court charged on both theories of murder, it is not possible for us to determine whether the jury found this appellant guilty of murder in the first degree

7. The argument as presented to us is couched in terms of ineffectiveness of trial counsel in not requesting a charge on the underlying felonies or taking a timely exception to the failure of the trial court so to charge. The issue was, however, raised by trial counsel in support of his motion for a new trial. The court decided the matter adversely to the defendant on the merits, not on the ground of waiver. Thus ineffectiveness, assuming it was present, resulted in no prejudice to the defendant. We note, moreover, that the trial took place more than six months prior to the announcement of this Court's decision in *Commonwealth v. Clair*, 457 Pa. 510, 326 A.2d 272 (1974). Under the circumstances, we, like the trial court, will consider the issue on its merits rather than in the context of ineffectiveness of counsel.

8. *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973). Under the new Crimes Code, felony murder is now classified as murder of the second degree, 18 P.C.S.A. § 2502(b).

on the basis of a finding of premeditated and malicious homicide, or on the theory of felony-murder. The evidence here was sufficient to support a verdict on either theory.

The Commonwealth relies upon our decision in *Commonwealth v. Darcy*, 362 Pa. 259, 66 A.2d 663 (1949). There the Court held that, although it is better practice for the trial judge to define the felonies underlying a charge of felony-murder,[9] "the omission to do so is not error where there is no issue raised as to the commission of the felony on which the charge of murder in the first degree is based and where its commission appears incontrovertible from the evidence". 362 Pa. at 279, 66 A.2d at 673. In *Darcy*, however, there was eyewitness testimony that the defendant had participated in the hold-up of a tavern and the shooting of the victim by one of Darcy's accomplices. In this case, the evidence of either a burglary or a robbery was circumstantial and consisted of the following:

Several witnesses testified that they had heard Shadron announcing, a few days before Bennett's death, that Shadron needed money and that he knew that Bennett kept a substantial amount of cash in his home. One witness accompanied the appellant on a ride to Bennett's home, which was in an isolated location, where Shadron checked out access to the residence. This witness also testified that Shadron "said he was going to go back in and take it all, and he would burn the house down with Mr. Bennett in it and make it look like an accident." Two days before Bennett's death, Shadron tried unsuccessfully to persuade another witness to join him, saying that "One of us could knock him out . . ." and, if necessary, "take care of him with a pillow," or "turn the gas stove on and it would eventually catch fire and blow up and there would be nothing left." On the night of the

9. See Pennsylvania Standard Jury Instructions, Criminal Subcommittee Drafts § 15, 2502B(3).

murder, Shadron asked this unwilling friend to wish him luck because he was going to "do it" later. Finally there is the fact that Mr. Bennett was stabbed to death and that the gas stove in the victim's home had been left burning when the marauder departed. By its verdict, of course, the jury indicated its belief beyond a reasonable doubt that it was indeed Shadron who had thus killed Bennett.

■ It is clear that the evidence in the case at bar was sufficient to support a verdict of guilty of murder in the first degree rendered by a jury under the proper instructions. However, it cannot be said that the commission of the felony is "uncontroverted." Thus it does not follow that, the commission of the underlying felony being contested, there is no requirement that the jury be fully instructed as to the *legal* meaning of the underlying felonies. We cannot agree with the trial court that such a definition would be "mere technical verbiage." As we stated in *Commonwealth v. Meas,* 415 Pa. 4, 45, 202 A.2d 74, 76 (1964):

> "We have said over and over again that one of the primary duties of a trial judge is to so clarify the issues that a jury may clearly understand the questions to be resolved".

The jury in this case was given no such understanding.

■ Support for this conclusion is to be found in our recent statement of the understanding which a defendant must be shown to possess of the elements of a crime with which he is charged before his plea of guilty may be accepted. *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974). We there held that while the terms robbery or murder "clearly connote some meaning to the layman, this meaning does not always embrace the basic legal elements of the crime." 455 Pa. at 203, 316 A.2d at 80. No less than a defendant who seeks to enter a plea of guilty, a jury in order to reach an intelligently based ver-

dict of guilty must be informed of the basic elements of the crime or crimes involved. For a verdict to be founded on felony-murder, the felony allegedly involved must be identified and described by more than merely its name; there must be an understandable delineation of the elements of the offense.

The judgment of sentence is vacated and the case remanded for a new trial.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., filed a concurring opinion in which NIX, J., joins.

ROBERTS, Justice, concurring.

I agree with the majority that appellant is entitled to a new trial because the trial court failed to instruct the jury on the elements of the underlying felonies which could form the basis of a felony murder verdict. Since appellant is entitled to a new trial on this ground, there is no need to reach the other issues addressed by the majority.

MANDERINO, Justice, concurring.

I concur in the majority's grant of a new trial solely because of the trial court's failure to charge the jury on the elements of burglary and robbery.

I would also like to comment on the majority's citation in footnote nine to the "Pennsylvania Standard Jury Instructions, Criminal Subcommittee Drafts § 15, 2502B(3)." Although the Standard Jury Instruction project may provide a helpful *guide* to trial judges, the standards are *not conclusive*. The suggestions contained in the drafts are always subject to challenge by attorneys in their advocacy before this Court.

NIX, J., joins in this concurring opinion.