656 A.2d 1335

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Freeman MAY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1994.

Decided April 4, 1995.

Reargument Denied May 17, 1995.

240

242

Timothy D. Sheffy, Joseph M. Farrell, for F. May.

Daniel Ehrgood, Bradford Charles, for Com.

Robert A. Graci, for Attorney General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

Following a trial by jury, Appellant, Freeman May, was convicted of first degree murder[1] in connection with the stabbing death of Kathy Lynn Fair. After a separate penalty hearing was held, the jury found one aggravating circumstance and one mitigating circumstance, and further found that the aggravating circumstance outweighed the mitigating circumstance. Therefore, the penalty was fixed at death. This is an automatic direct appeal from that sentence.[2] For the reasons discussed below we affirm the conviction of first degree murder but vacate the sentence of death and remand the case to the Court of Common Pleas of Lebanon County, Criminal Division, for a new sentencing hearing.

The facts of this case are as follows. In 1988, human skeletal remains were discovered by a man cutting wood in a remote wooded location in Lebanon County. The remains were buried under logs, brush and leaves. Through an examination of the remains by a forensic pathologist, Dr. Neil A. Hoffman, police determined that the remains were those of Kathy Lynn Fair, who was last seen alive on September 4, 1982, and who had been reported as missing after failing to appear for a date with her sister. Dr. Hoffman also determined from marks on the bones that the cause of death was multiple stab wounds inflicted by a short, stout, single-edged weapon appearing to be a knife. N.T. at 645–646.

Appellant was charged with the murder of Kathy Fair in 1990. At trial, Detective Michael F. Wahmann, Chief County Detective in the Office of the District Attorney for Lebanon County, testified that at the time Kathy Fair's remains were found, he recalled an incident that had occurred in December of 1982 in approximately the same location where Kathy Fair's remains were found. N.T. at 731. In the December 1982 incident, two girls who had accepted a ride from Appellant were stabbed with a short, stiff, folding single-edged knife and

1. 18 Pa.C.S. § 2502(a).
2. 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b).

left for dead not far from the place where Kathy Fair's remains were discovered. One of the girls was raped. In connection with the 1982 rape-assaults, Appellant was charged with and convicted of two counts of attempted murder, aggravated assault, reckless endangerment, and one count of rape. The two victims, here identified as G.S. and S.S., survived the stabbings and testified in the instant case about the 1982 rape-assaults.

Additionally, Stanley May, Appellant's brother, testified that Appellant came to his house on December 17, 1982, and told Stanley May that "he took this girl out a few months ago and said he tried to make out with her, and he said that he stabbed her and buried her with brushes. But he said that's not why he's talking to me now. He said he did it again last night [referring to the rape-assaults on G.S. and S.S.]." N.T. at 799.[3] Stanley May also testified that Appellant always carried a folding buck knife, which is a short, sturdy, single-edged knife. N.T. at 797.

Appellant's wife, Denise DeHaven, also testified at trial that when she was visiting Appellant while he was in jail in connection with the 1982 rape-assaults, Appellant told her that "he had hurt another girl, buried her under some leaves and bushes in the woods." N.T. at 826. Ms. DeHaven also testified that Appellant had written letters to her in which he told her that he had "hurt a girl and buried her in the woods." N.T. at 827.

Thomas W. Fryberger, an acquaintance of Appellant, testified that on one occasion, Appellant took him and two girls up to a wooded location. N.T. at 836. Mr. Fryberger later took a state police trooper, Samuel Curley, to that location, and Trooper Curley testified that the wooded location was where Kathy Fair's remains were found. N.T. at 845.

Charles W. Neidig, an inmate at the prison where Appellant was incarcerated for the 1982 rape-assaults, also testified at

---

**3.** Stanley May told the police about this statement at the time of Appellant's arrest in connection with the 1982 rape-assaults; however, the import of the first sentence of this statement was not then understood, since Kathy Fair's remains had not yet been found.

trial. Mr. Neidig testified that he had a conversation with Appellant in the prison yard after Appellant returned from a Post Conviction Hearing Act hearing which was held in connection with the convictions relating to the 1982 rape-assaults:

> MR. BRADFORD CHARLES [for the Commonwealth]: Can you tell the jury and the Judge what that conversation was?
>
> MR. CHARLES NEIDIG: Yes. I seen [sic] Mr. May out in the yard, and I asked him how he made out in court at his hearing, and he told me, he said he didn't make out too good. I said, well, you know, I asked him what happened, and he said they were trying [to] put a body on him. I said, a body. I said, well, I asked him how they connected him up with a body, and he said his brother was suppose [sic] to be testifying against him. And I said, well, how long ago did this happen, you know. He said, Quite a while ago. And I said, Well, that's too long, you know. Don't worry about that, you know, and he said, Yeah, but I did it. And I said, Man don't go blowing that around, and just right about then somebody else walked over and conversation was stopped.

N.T. at 850–851.

Appellant only presented two witnesses and did not testify on his own behalf. Appellant's first witness, one of the investigating police officers, testified that Appellant's name never came up in connection with Kathy Fair until her remains were found. N.T. at 920. Appellant's second witness, the grandmother of Kathy Fair's child, also testified that she had never heard Appellant's name until his arrest for the murder of Kathy Fair. N.T. at 934.

In each case in which the death penalty is imposed, this Court is required to conduct an independent review of the sufficiency of the evidence on the charge of murder of the first degree, even where the defendant has not challenged the conviction on that ground. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983),

*reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all the elements beyond a reasonable doubt. *Commonwealth v. Rhodes,* 510 Pa. 537, 510 A.2d 1217 (1986). Additionally, circumstantial evidence alone is sufficient to convict one of a crime, including first degree murder. *Commonwealth v. Gorby,* 527 Pa. 98, 107, 588 A.2d 902, 906 (1991). Based on our review, the Commonwealth clearly meets this test.

 In order to prove murder of the first degree, the Commonwealth must show that a human being was unlawfully killed, that the accused committed the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Mitchell,* 528 Pa. 546, 599 A.2d 624 (1991). In the instant case, there is no dispute that Kathy Fair was unlawfully killed.[4] Additionally, there was testimony that Appellant confessed to at least three people, Stanley May, Denise DeHaven and Charles Neidig, to killing a girl and hiding her in the woods, circumstances substantially similar to the manner in which Kathy Fair was killed and later discovered. Further, there was testimony from the victims of the 1982 rape-assaults, an incident which occurred proximate in time to the disappearance of Kathy Fair and proximate in location to the later discovery of her remains. Moreover, an acquaintance of Appellant testified that Appellant had once taken him to the location where Kathy Fair's remains were found. Finally, there was testimony that Appellant always carried a type of knife consistent with the type of weapon used to kill Kathy Fair, and that Appellant had used a similar type of knife in his attacks on G.S. and S.S. This evidence, and all reasonable inferences therefrom, when viewed in a light most favorable to the Commonwealth, is sufficient to prove that Appellant killed Kathy Fair. Finally, there is sufficient evidence to prove that the killing was done in an intentional,

4. Dr. Hoffman testified that the wounds could not be self-inflicted. N.T. at 645–646.

deliberate and premeditated manner. Dr. Hoffman testified that Kathy Fair suffered at least five stab wounds to the upper body. N.T. at 641. Specific intent to kill can be proven by the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Bricker*, 458 Pa. 367, 326 A.2d 279 (1974). The upper body is clearly a vital part of the body. Accordingly, we find that the evidence upon which Appellant's conviction for first degree murder was based was sufficient as a matter of law to sustain that conviction.

Appellant now raises several claims of error which he alleges require a new trial to be granted or the death sentence to be vacated. These claims were raised in post-trial motions and were denied.

█ Appellant's first claim of error is that the trial court erred in permitting evidence to be admitted during the trial involving other criminal conduct of Appellant. At trial, the trial court permitted the testimony of G.S. and S.S. and evidence related to the 1982 rape-assaults under the "common scheme" or "signature crime" exception to the general rule that evidence of other criminal acts of the defendant is not admissible. *See, e.g., Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994); *Commonwealth v. Hawkins*, 534 Pa. 123, 626 A.2d 550 (1993). Appellant argues that the similarities between the other criminal conduct of Appellant and the criminal conduct involving Kathy Fair do not show any common thread or scheme or distinct signature, but are merely coincidental, not logically connected, and have no common modus operandi.

Appellant is incorrect. The trial court noted that, despite the handicap imposed upon the Commonwealth due to the passage of time and the ravages of nature which rendered certain circumstances of Kathy Fair's death unclear, the following facts were established:

Kathy Fair was twenty-two (22) years old when she disappeared, and the two victims of the 1982 rape-assault were fifteen (15) and nineteen (19) years old. Kathy Fair was a Caucasian woman, and the two victims of the 1982 rape-

assaults are Caucasian women. Kathy Fair was slim and attractive, and the two victims of the 1982 rape-assaults are slim and attractive. Kathy Fair died of stab wounds inflicted with a small knife. Defendant used a small knife to inflict wounds on the victims of the 1982 rape-assault. Kathy Fair's remains showed stab wounds were inflicted on the upper body. The two victims of the 1982 rape-assaults were stabbed in the upper body. Kathy Fair disappeared in early September of 1982. The two victims of the 1982 rape-assaults were attacked in mid-December of 1982. Kathy Fair was stabbed and possibly molested. Both victims of the 1982 rape-assaults were stabbed, and one was raped. Kathy Fair was stabbed at least five (5) times. The two victims of the 1982 rape-assaults were stabbed fifteen (15) and twenty-nine (29) times. Kathy Fair's remains were left in a remote wooded area. The two victims of the 1982 rape-assaults were left approximately two hundred (200) feet from the place where Kathy Fair's remains were found. Kathy Fair, when last seen, had brownish shoulder-length hair. The two victims of the 1982 rape-assaults had brownish shoulder-length hair.

Trial Court Opinion at 23–24. The trial court found the remote wooded location aspect of the two crimes to be of great significance. The record reveals that this area is not accessible except by unimproved roads, and it is not used except by local residents, of which there are few, and hunters. Additionally, two police officers testified at trial that no other crimes had been reported in the general location of the 1982 rape-assaults either before or after the incident in December of 1982. Based on a thorough review of the record, we do not find that the trial court erred in finding that the facts of the Kathy Fair murder are sufficiently similar to the facts of the 1982 rape-assaults so as to constitute Appellant's "signature."

Additionally, the admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may only reverse rulings on admissibility upon a showing that the lower court abused its discretion. *Commonwealth v. Billa,* 521 Pa. 168, 177, 555 A.2d 835, 840 (1989).

The trial court must balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice. *Id.* Here, the evidence was relevant to show a common scheme by Appellant; that is, that he sexually assaulted and stabbed young women in a particular, remote location. Moreover, although the evidence of the 1982 rape-assaults was undoubtedly of a prejudicial and potentially emotional nature, we do not believe that the trial court abused its discretion in deciding that the evidentiary value of the evidence outweighed its potential for prejudice.

 Appellant's next claim of error is that the trial court erred in permitting the testimony from Appellant's former wife. Appellant contends that Denise DeHaven was barred from testifying under the spousal confidential communications privilege codified at 42 Pa.C.S. § 5914.

Section 5914 provides:

**Confidential communications between spouses.**

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

This privilege, which is waivable only by the spouse asserting the privilege, prevents a husband or wife from testifying against their spouse as to any communications which were *confidential* when made and which were made during the marital relationship.[5] *See Commonwealth v. Newman,* 534 Pa. 424, 633 A.2d 1069, 1072 (1993); *Commonwealth v. Hancharik,* 534 Pa. 435, 633 A.2d 1074, 1077 (1993). This privilege remains in force even after death or divorce. *Commonwealth v. Clark,* 347 Pa.Super. 128, 131, 500 A.2d 440, 441 (1985),

5. We note that this privilege is distinct from the principle embodied in 42 Pa.C.S. § 5913 that, in certain circumstances, a husband or wife may be incompetent as a witness for or against the other during the existence of the marital relationship. *See Commonwealth v. Newman,* 534 Pa. 424, 633 A.2d 1069, 1072 (1993); *Commonwealth v. Hancharik,* 534 Pa. 435, 633 A.2d 1074, 1076, n. 2, 1077 (1993). Appellant does not dispute that Ms. Dehaven is competent to testify against him.

*appeal granted,* 512 Pa. 1, 515 A.2d 1320 (1986), *appeal dismissed,* 516 Pa. 16, 531 A.2d 1108 (1987), *citing Commonwealth v. Peluso,* 240 Pa.Super. 330, 361 A.2d 852 (1976), *rev'd on other grounds,* 481 Pa. 641, 393 A.2d 344 (1978). In the instant case, there is no dispute that the communications made between Appellant and his former wife were made during the marital relationship. However, the Commonwealth contends that the communications when made were not confidential.

First, the Commonwealth argues that the letters from Appellant to Ms. DeHaven were not confidential since Appellant signed a form permitting prison officials to review all incoming and outgoing mail of Appellant. N.T. at 820. Accordingly, the Commonwealth contends, Appellant had no reasonable expectation that his communications to his wife would be held confidential. We find this argument persuasive.[6] In order for the spousal privilege rule to apply, it is essential that the communication be made in confidence and with the intention that it not be divulged. *Commonwealth v. Darush,* 279 Pa.Super. 140, 148, 420 A.2d 1071, 1075 (1980), *vacated on other grounds,* 501 Pa. 15, 459 A.2d 727 (1983); *Commonwealth v. Rough,* 275 Pa.Super. 50, 418 A.2d 605 (1980). *See also State v. Smith,* 384 A.2d 687, 691 (Me.1978) (the inquiry in all cases should focus on the spouse's reasonable expectation of confidentiality). We do not believe that Appellant could have possessed a reasonable expectation that the information contained in his correspondence to his wife would remain confidential when prison officials had the right to read all of his letters. *See State v. Smyth,* 7 Wash.App. 50, 499 P.2d 63 (1972) (letter sent from jail to wife not privileged; defendant admitted that he knew all outgoing mail from jail was read before it was sent out); *Cf. Commonwealth v. Boyd,* 397 Pa.Super. 468, 580 A.2d 393 (1990) (defendant's letter to

**6.** *Cf. Commonwealth v. Skibicki,* 402 Pa.Super. 160, 586 A.2d 446, *appeal dismissed,* 528 Pa. 637, 598 A.2d 993 (1991), in which the Superior Court held that the admission of a letter which defendant had written, while incarcerated, to his wife did not violate the statutory spousal privilege where the Commonwealth received the letter from an independent third party. *Skibicki* does not discuss whether the defendant's signed permission to have all correspondence reviewed negated the confidential nature of the correspondence.

his attorney containing details of crime, which letter defendant hung up on his cell wall, was not confidential communication protected by attorney-client privilege).

Second, the Commonwealth argues that the presence of Appellant's and Ms. Dehaven's two-year old son during the conversation at the jail, in which Appellant allegedly admitted to Ms. DeHaven that he killed a girl, destroyed the confidential nature of that conversation. Generally, the presence of third parties negates the confidential nature of the communication. *Clark*, 347 Pa.Super. at 131, 500 A.2d at 442. However, when the third party is a minor or is otherwise lacking in capacity to be a witness, the confidential character of the communication may not be lost. *See* 3 Wharton's Criminal Evidence (14th ed.) § 525 (1987); 49 A.L.R.4th 480; 81 Am.Jur.2d § 316; *State v. Benner*, 284 A.2d 91 (Me.1971); *Hicks v. Hicks*, 271 N.C. 204, 155 S.E.2d 799 (1967). Although this appears to be a question of first impression in this Commonwealth, we have no trouble finding under these facts that the presence of Appellant's two-year old child did not destroy the confidential nature of the communication. Courts that have considered this situation have generally looked to the age of the child and whether the child took part in or paid attention to the conversation between the husband and wife in determining whether the presence of the child destroyed the confidential nature of a communication. *See Master v. Master*, 223 Md. 618, 166 A.2d 251 (1960) (communication made in presence of children old enough to understand fully what was being said was not confidential); *State v. Muenick*, 26 Ohio App.3d 3, 4–5, 498 N.E.2d 171, 173 (Summit County 1985) (communication made in front of sons aged ten and eleven not confidential; under Ohio Rules of Evidence, boys were presumed competent to be witnesses); *Hicks v. Hicks*, 271 N.C. at 207, 155 S.E.2d at 801 (presence of eight year old daughter who was singing and playing during the communication did not destroy confidential nature of communication); *State v. Benner*, 284 A.2d at 110 (expectation of confidentiality not reasonable where communication made in front of sleeping eight-year old son who could have awakened and heard the

communication; however, confidentiality not affected by presence of three-year old daughter due to her tender age). We do not believe that a two-year old child, even if he or she paid attention to the conversation, is capable of comprehending a conversation between two adults such that Appellant's expectation of confidentiality would be objectively unreasonable.

However, although we find it was error for the court to permit Ms. DeHaven to testify as to the substance of the conversation with Appellant in the jail, we find such error to be harmless. This testimony was merely cumulative of Ms. DeHaven's testimony with respect to the letters she received, and cumulative of the testimony provided by Stanley May and Charles Neidig. Erroneously admitted evidence that is cumulative of other, untainted evidence is harmless error. *See Commonwealth v. Foy*, 531 Pa. 322, 327, 612 A.2d 1349, 1352 (1992); *Commonwealth v. Hall*, 523 Pa. 75, 565 A.2d 144 (1989); *Commonwealth v. Stinson*, 427 Pa.Super. 289, 628 A.2d 1165 (1993), *appeal denied*, 537 Pa. 608, 641 A.2d 309 (1994). *See also Commonwealth v. Flynn*, 314 Pa.Super. 162, 460 A.2d 816 (1983) (even if testimony improperly entered over assertion of privilege, error harmless); *Commonwealth v. Rough*, 275 Pa.Super. at 65, 418 A.2d at 613.

Next, Appellant claims that the trial court erred in instructing the jury as to second degree murder without instructing the jury on the elements of the felonies alleged to have occurred to support a second degree murder charge, namely, attempted rape and burglary. Our review of the record reveals that the trial court carefully explained the elements of first, second and third-degree murder, as well as the elements of manslaughter, but did in fact fail to explain the elements of robbery and attempted rape in the guilt phase of the trial. For a verdict to be founded on second degree murder, the jury must be instructed as to the elements of the alleged felonies. *See Commonwealth v. Shadron*, 471 Pa. 461, 370 A.2d 697 (1977). Therefore, the trial court erred when it did not instruct the jury as to the elements of attempted rape

and robbery. However, an error in the jury instructions warrants a new trial only where such error has been clearly prejudicial to the defendant. *Commonwealth v. McCauley*, 403 Pa.Super. 262, 588 A.2d 941 (1991), *appeal denied* 529 Pa. 656, 604 A.2d 248 (1992). In the instant case, Appellant fails to demonstrate how he was prejudiced by this error and we find such error to be harmless. The jury found Appellant guilty of first degree murder, not second degree murder. Proof of first degree homicide does not depend on proof of other felonies, and therefore the trial court's failure to define the elements of burglary and attempted rape was of no import.[7]

Appellant's next claim of error is that the trial court erred in permitting evidence and argument in the guilt and penalty phases that Appellant attempted to rape Kathy Fair.[8] We note that Appellant does not challenge any individual piece of evidence or specific testimony; rather, Appellant's argument appears to be premised on the contention that the evidence admitted was not sufficient to prove attempted rape. Evidentiary rulings are committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion. *Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74 (1987). To determine relevancy, the test is whether the evidence sought to be introduced tends to establish a material fact or make a fact at issue more or less probable. *Id.* We find that the evidence introduced relating to the alleged attempted rape of Kathy Fair was clearly relevant as tending to prove an essential fact in issue—

7. We also note that Appellant did not object to the charge as given or request that the elements of the alleged felonies be provided to the jury; accordingly, this claim of error could be deemed waived. However, as we have not been strict in applying our waiver rules in death penalty cases, *see Commonwealth v. Billa*, 521 Pa. 168, 181, 555 A.2d 835, 842 (1989), we nevertheless address this claim.

8. Appellant also alleges that the evidence submitted concerning the alleged attempted rape was insufficient to support a finding that Appellant attempted to rape Kathy Fair. Since such a finding was not relevant to the jury's conviction of first degree murder, and we are vacating the sentence of death, we need not address this claim.

254

whether the killing was committed during the perpetration of a felony.

■ Finally, Appellant claims that the sentence of death must be vacated because the jury incorrectly and improperly found that the killing was committed while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6), the felony being *rape*. During the penalty phase, the Commonwealth presented two aggravating circumstances: first, that the killing was committed while in the perpetration of a felony, the felony being *attempted* rape, 42 Pa.C.S. § 9711(d)(6); and second, that Appellant had a significant history of felony convictions involving the use or threat of violence against a person, 42 Pa.C.S. § 9711(d)(9). The jury was instructed as to the elements of attempted rape. When the jury returned from its deliberations, the Clerk recited the jury's verdict from the verdict slip:

> THE CLERK: ... We the jury unanimously sentence the Defendant to death. One or more of the aggravating circumstances which outweighs any mitigating circumstances. The aggravating circumstances unanimously found are Defendant ·committed killing while in the preparation of a felony.

> THE COURT: I believe it's perpetration.

> THE CLERK: Perpetration of a felony, the felony being rape. Mitigating circumstances found by one or more of us is the Defendant had no prior criminal convictions....

N.T. at 1,142.

Neither the Commonwealth nor Appellant objected to the verdict slip as prepared by the jury, which did in fact indicate that the jury found that Appellant had committed the killing of Kathy Fair during the perpetration of a felony, the felony being rape.[9] In post-trial motions, and before this Court, Appellant argues that the verdict slip is invalid as the jury was

9. Although this claim may also be technically waived because of Appellant's failure to object to the verdict before the jury was dismissed, we will nonetheless address it because of our relaxed waiver rule in death

not instructed on the elements of rape, and the evidence is insufficient to support a finding that Kathy Fair was raped.

We find Appellant's contention to have merit. The jury here simply found what it was not permitted to find.[10] We decline to speculate as to what the jury may have intended and refuse to attempt to "mold" the death sentence verdict to that intention, whatever it may be, since there is no evidence on the record as to the jury's intention other than it "found" that Appellant had committed the crime of rape.[11] *Cf. Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38 (1994) (where pre-printed verdict slip contained error, death sentence vacated notwithstanding proper instructions to jury). In this regard, we find the Commonwealth's argument that since the jury found that Appellant raped Kathy Fair, it necessarily found that Appellant *attempted* to rape her, to be specious. This type of "lesser included" analysis is inapplicable where the jury was not instructed as to the elements of rape, the Commonwealth did not argue that there was evidence of an actual rape, and the finding of rape could not be supported by sufficient evidence;[12] under no circumstance could the jury have found in this case that Appellant committed the crime of rape. Since it was error for the jury to have determined that

penalty cases. *See Commonwealth v. Billa, supra,* 521 Pa. 168, 555 A.2d 835.

10. In this regard, we find *Commonwealth v. Billa, supra,* 521 Pa. 168, 555 A.2d 835, to be instructive. In *Billa,* the Commonwealth presented the aggravating circumstance that the killing was committed during the perpetration of a felony, rape. However, the trial court failed to instruct the jury as to the elements of rape. This Court held that it was error to allow the jury to speculate on the elements of this crime. We stated that "[t]he court must define the elements of any felony which the Commonwealth seeks to use as the basis for conviction or sentence." 521 Pa. at 187, 555 A.2d at 845. Although the issue in *Billa* is concededly distinct from the issue here, we find our holding in *Billa* to have application here. Simply put, the felony which forms the basis for the sentence must be defined for the jury, and here the felony the jury found was not so defined.

11. Moreover, the jury was polled at the conclusion of the announcement of the verdict; the verdict slip was again read to the jury and each juror agreed with the verdict as indicated on the verdict slip.

12. In fact, the Commonwealth declined to argue that a rape had occurred since there was no evidence of penetration, an element of rape. N.T. at 1082.

the aggravating circumstance existed based on a finding of rape, the aggravating circumstance is invalid.[13]

Accordingly, the sentence of death is vacated and the matter is remanded to the Court of Common Pleas of Lebanon County for a new sentencing hearing pursuant to 42 Pa.C.S. § 9711(h)(4).

PAPADAKOS, J., did not participate in the decision of this case.

CASTILLE, J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation.

CASTILLE, Justice, *dissenting.*

This automatic appeal represents another instance in which a death penalty will be reversed due to harmless error. After finding the Commonwealth's first aggravating circumstance, the jury's foreperson wrote on the sentencing verdict slip that the killing was committed while in the perpetration of a rape. However, the record reveals that the trial court specifically instructed the jury that the felony asserted by the Commonwealth was attempted rape:

> *THE COURT:* In this case under the Sentencing Code only the following matters if proven to your satisfaction beyond a reasonable doubt can be aggravating circumstances. First, that the [appellant] committed a killing while in the perpetration of a felony. The felony here contended by the Commonwealth is that of *attempted rape.* For purposes of this case, ladies and gentlemen, the crime of *attempted rape* includes that the [appellant] attempted that offense, that he did a certain act that would be in pursuance of the further-

13. We wish to state clearly that in reaching this conclusion, our decision should not be interpreted as a finding that the aggravating circumstance (the killing was committed during the commission of a felony) is not supported by sufficient evidence. Rather, we emphasize that our conclusion is based on the rationale that the jury erred in considering the wrong felony to support its finding that the killing was committed during the commission of a felony. In fact, we cannot "review" the sufficiency of the evidence to support a finding of rape since the Commonwealth never attempted to present such evidence or prove the crime of rape.

ance of that rape, that he intended to commit a rape upon Kathy Fair, and that the act that he did constituted a substantial step toward the commission of that crime. In other words, *attempted rape* would include that the [appellant] attempted to engage in sexual intercourse with Kathy Fair that Kathy Fair was not his spouse, they weren't married at the time, and that he did that through the use of forcible compulsion or threat of forcible compulsion that would prevent resistance by someone who has reasonable resolution. Now, if you are satisfied that those elements have been made out for you as I have described them for you for the charge of *attempted rape,* you may then consider the aggravating circumstance that the [appellant] committed this killing while in the perpetration of a felony.

N.T. at 1,132–1,133 (emphasis added).

It is well settled that there is a presumption in the law that the jury followed the court's instructions, thus, this is an instance of inadvertent error, nothing more, nothing less. *Commonwealth v. Tilley,* 528 Pa. 125, 142, 595 A.2d 575, 583 (1991). As the trial court below concluded because of the passage of years before the body was discovered, the jury had no sufficient evidence upon which to determine that there was a reasonable basis for concluding that appellant raped the victim before killing her. However, there was sufficient evidence to prove that appellant attempted to rape her.

Moreover, the majority's reliance on *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989), is misplaced. In *Billa,* the trial court allowed the Commonwealth to demonstrate that the killing was committed during the perpetration of a rape. However, despite the prosecutions suggestion to do so, the trial court simply *refused* to instruct the jury as to the elements of rape. This Court held that it was erroneous to allow the jury to "speculate" on the elements of that crime and that the trial court must define the elements of the felony that the prosecution seeks to use for sentencing. *Id.* 521 Pa. at 187, 555 A.2d at 845. Applying this holding to the case *sub judice,* the majority concludes that the sentence of death should be reversed because the jury was not instructed as to

the elements of rape. This simply was not the case. The crime of attempted rape is a lesser included offense of the crime of rape. As the preceding charge demonstrates, the trial court necessarily had to charge the jury with the elements of rape when it instructed them as to the elements of attempted rape. Thus, unlike *Billa*, this Court is not confronted with a situation where we are forced to speculate as to the jury's intention. The jury was charged with the elements of the felony in question and based upon the evidence presented by the Commonwealth the jury determined that appellant committed a killing while in the perpetration of that felony, attempted rape. The layperson's unintended mistake in omitting "attempted" before "rape" from the verdict slip should be read for what it is worth, harmless error. Accordingly, I would affirm the sentence of death.