J-A08006-18

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD D. BERNARD, | : | |
| | : | |
| Appellant | : | No. 2286 EDA 2017 |

Appeal from the Judgment of Sentence May 25, 2016
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000120-2015

BEFORE:   PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 01, 2018**

After a bench trial, the court convicted Leonard Bernard of robbing 76-year-old Alice Stackhouse in her home and tying her up while he escaped. In this *nunc pro tunc* appeal,[1] Bernard contends the court committed six separate errors: (1) improperly allowing Stackhouse to identify him in court; (2) improperly admitting opinion testimony from a witness not qualified as an expert; (3) improperly admitting hearsay testimony from the same witness; (4) improperly admitting evidence subject to the spousal communications

---

* Retired Senior Judge assigned to the Superior Court.

[1] Bernard exercised his right to represent himself during trial and during the initial post-sentence proceedings. He retained private counsel after filing several *pro se* appeals and post-sentence motions. Ultimately, his direct appeal rights were restored *via* a Post Conviction Relief Act proceeding and the agreement of the Commonwealth.

privilege; (5) finding the evidence at trial sufficient and credible enough to support a guilty verdict; and (6) imposing an unreasonably excessive sentence. We conclude Bernard has failed to establish any grounds for relief, and therefore affirm.

Stackhouse testified that due to several chronic illnesses, she relied on in-home care services. *See* N.T., Bench Trial, 2/17/16, at 49. Brianna Mitchell, Bernard's girlfriend (now wife), had provided in-home care for Stackhouse in 2014. *See id.*, at 50. Stackhouse fired Mitchell in November 2014, due to her belief that Mitchell had stolen Stackhouse's supply of pain medication. *See id.*, at 52.

On December 20, 2014, Stackhouse answered a knock on her door. *See id.*, at 56. A man was at the door, and he forced his way in to Stackhouse's apartment. *See id.*, at 57. The man ripped a necklace off of Stackhouse while pushing her onto a couch. *See id.*, at 59.

When Stackhouse began screaming, he slapped her in the face. *See id.*, at 62. He threatened to "cut" her if she didn't stop screaming. *Id*. He proceeded to steal her wedding and engagement rings, as well as her watch. *See id.*, at 65.

The man helped Stackhouse into another room using her walker. *See id.*, at 71. He ransacked the room, stealing more jewelry. *See id.*, at 74. He placed a beach bag over Stackhouse's head, and then bound her hands together with a belt. *See id.*, at 75, 77-78. The man continued to ransack her

apartment. *See id*., at 81. Ultimately, he left the apartment with Stackhouse tied up on the floor. *See id*., at 96.

During her testimony, Stackhouse identified Bernard as the man who had robbed her. *See id*., at 110. She admitted she had previously been unable to identify him from a photographic array. *See id*., at 112.

Detective Michael Buchmann testified police immediately suspected Mitchell and her significant other were involved with this crime. *See id*., at 25-26. Police obtained a search warrant for Bernard and Mitchell's home. Detective Jeffrey McCloskey testified that during the search, police found several items clearly belonging to Stackhouse. *See* N.T., Bench Trial, 2/22/16, at 70-78.

Turning to Bernard's first issue on appeal, he argues the court erroneously permitted Stackhouse to identify him in court. We may not reverse a court's ruling on admission of evidence absent an abuse of discretion. *See Commonwealth v. Hardy*, 918 A.2d 766, 776 (Pa. Super. 2007). To constitute an abuse of discretion, a ruling must be more than a mere error in judgment. *See id*. We can find an abuse of discretion only when we determine the ruling was the result of partiality, prejudice, bias, ill-will, or manifest unreasonableness. *See id*.

"Evidence that is not relevant is not admissible." Pa.R.E. 402. Relevant evidence is defined as evidence "having any tendency to make the existence of any *fact* that is of consequence to the determination of the action more

probable or less probable." Pa.R.E. 401(a) (emphasis supplied). Even if evidence is relevant, it may be excluded if its probative value is outweighed by, among other considerations, the danger of delay caused by unnecessary cumulative evidence. *See* Pa.R.E. 403. Balancing of the competing interests is vested in the sound discretion of the trial court, and we will disturb the court's decision only if it has abused its discretion. *See Commonwealth v. Parker*, 882 A.2d 488, 492 (Pa. Super. 2005).

Bernard argues he was entitled to a pre-trial lineup before Stackhouse was permitted to identify him in court.[2] Bernard, however, did not have an absolute right to a pre-trial lineup. *See Commonwealth v. Sexton*, 400 A.2d 1289, 1293 (Pa. 1979). Nor was the in-court identification *per se* inadmissible. *See id*. However, "a timely request for a pre-trial … identification procedure should be granted." *Id*. The request should be granted as otherwise the defendant is denied "the possibility of evidence which could have been used to challenge the credibility of the subsequent in-court identifications." *Id*.

Here, the Commonwealth presented evidence of failed pre-trial identifications, albeit not pre-trial lineups. Bernard was permitted to cross-examine Stackhouse regarding the failed identifications. She admitted she did

---

[2] Bernard, acting *pro se*, filed a motion for an identification lineup prior to the start of trial. However, he did not serve the Commonwealth or the trial court. Thus, the issue was not formally presented to the trial court until after Stackhouse had identified Bernard in court. The issue is thus waived. In any event, we conclude it is meritless, as set forth further in our analysis.

not identify her assailant in two separate pre-trial photo arrays. *See* N.T., Bench Trial, 2/18/16, at 19-20. Thus, the requested pre-trial lineup would have merely been cumulative to the evidence that was presented at trial attacking the credibility of Stackhouse's identification. The court did not abuse its discretion and we conclude Bernard's first issue on appeal merits no relief.

Next, Bernard contends the court erred by permitting Detective Michael McGinnis to provide expert opinion testimony when he was not qualified as an expert. Bernard concedes that this objection was not raised at trial. Regardless, he argues the Commonwealth's failure to offer McGinnis as an expert "should be viewed as prejudicial against [Bernard]." *See* Appellant's Brief, at 19.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[I]t is axiomatic that issues are preserved when objections are made timely to the error or offense." *Commonwealth v. Baumhammers*, 960 A.2d 59, 73 (Pa. 2008) (citations omitted). *See also Commonwealth v. Clair*, 326 A.2d 272, 274 (Pa. 1974) ("[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected.") This issue is waived.

In his third issue, Bernard raises another challenge to the testimony of Detective McGinnis, this time on hearsay grounds. However, he once again concedes he made no timely objection to the testimony at trial. *See* Appellant's Brief, at 21. This issue is also waived.

Next, Bernard asserts the court erred in permitting the Commonwealth to present communications between himself and Mitchell. He claims the communications are protected under the spousal communications privilege, codified at 42 Pa.C.S.A. § 5914: "Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial."

> Communications between spouses are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption. In order for a confidential communication between spouses to be protected, knowledge must be gained through the marital relationship and in the confidence which that relationship inspires. In order to be protected under § 5914, it is essential that the communication be made in confidence and with the intention it not be divulged. Therefore, whether a particular communication is privileged depends upon its nature and character of the circumstances under which it was said. Accordingly, if the nature of the communication is not imbued with an aura of a sharing disclosure precipitated largely due to the closeness spouses share, then arguably it is not privileged.

***Commonwealth v. McBurrows***, 779 A.2d 509, 514 (Pa. Super. 2001) (internal quotation marks and citations omitted). Only the spouse asserting the privilege can waive it. ***See Commonwealth v. May***, 656 A.2d 1335, 1341 (Pa. 1995).

The evidence challenged by Bernard falls into two categories. The first involves Mitchell's testimony on the events leading up to the robbery. The Commonwealth filed a pre-trial motion to present Mitchell's testimony of her observations of Bernard leading up to the robbery. ***See*** N.T., Hearing,

2/12/16, at 91. Bernard did not oppose the Commonwealth's motion: "Yes, Your Honor. So long as the rule is limited to her observation and not words." *See id*., at 91-92. *See also id*., at 77 (Bernard requesting to limit Mitchell's testimony to things she had seen and not what she had heard). Thus, Bernard failed to preserve this challenge.

Bernard's second challenge to the trial court's application of the marital communication privilege involves letters Bernard wrote to Mitchell while both were in jail. The Commonwealth presented evidence that all mail between inmates at the jail was subject to inspection by authorities. *See id*., at 14-15. Inmates were given notice of this inspection through the inmate handbook. *See id*., at 16-17. Records indicated that Bernard was given a copy of the handbook during his intake proceedings. *See id*., at 26.

For the spousal communication privilege to apply, "it is essential that the communication be made in confidence and with the intention that it not be divulged." *May*, 656 A.2d at 1342 (citations omitted). A prisoner has no reasonable expectation of confidentiality of his letters to his spouse if he knows the letters are subject to inspection by prison officials. *See id*.

Bernard asserted that he was unaware jail officials had the right to review his letters to Mitchell. *See* N.T., Hearing, 2/12/16, at 71. He claimed he did not have access to the prison handbook at the time he wrote the letters, as he only had access to the handbook during certain times. *See id*., at 72-73. However, these claims were not made while Bernard was testifying under

oath. **See id**., at 69-71 (Bernard refusing to testify at the hearing). **See also id**., at 73 (the court informing Bernard that his arguments were not evidence of record).

Bernard does not point to any evidence of record which contradicts the court's findings. As noted, there is significant evidence of record supporting the findings. Under these circumstances, we cannot conclude the court erred in finding Bernard did not have a reasonable expectation of confidentiality in his jail-house letters to Mitchell. Bernard's fourth issue on appeal merits no relief.

Next, Bernard challenges, in a single issue, the weight and sufficiency of the evidence supporting the court's verdict.[3] Generally, blending these two issues is improper, as a challenge to the weight of the evidence is a legally distinct claim from a challenge to the sufficiency of the evidence. In fact, a challenge to the weight of the evidence *concedes* the sufficiency of the evidence. **See Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

However, despite this flaw, we will address both of Bernard's arguments, as they are both premised upon the same condition: that we conclude Bernard was entitled to relief on his prior evidentiary claims on appeal. **See** Appellant's Brief, at 32 ("Without Ms. Mitchell's testimony, the guilty verdict reached by

---

[3] Bernard filed multiple post-trial and post-sentence motions. He raised his challenge to the weight of the evidence in a post-trial, but pre-sentence motion. The court addressed the issue post-sentence.

the trial court would have been against the weight of the evidence."). ***See also id***., at 32-33 ("Appellant concedes that there is sufficient evidence to convict him if the tainted in court identification, unqualified expert opinion of Detective McGinnis, and privileged marital communications are deemed properly admitted under the … Rules of Evidence."). As we have concluded he is due no relief on his evidentiary challenges, his challenges to the weight and sufficiency of the evidence at trial merit no relief.

In his final issue on appeal, Bernard raises two challenges to the discretionary aspects of the sentence imposed by the trial court. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." ***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). "Two requirements must be met before we will review this challenge on its merits." ***Id***. (citation omitted).

"First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." ***Id***. (citation omitted). ***See also*** Pa.R.A.P. 2119(f). "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." ***Id***. (citation omitted). That is, "the sentence violated either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular

fundamental norm underlying the sentencing process." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005) (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. ***See id***. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." ***Id***. (citation omitted). Here, Bernard has preserved his arguments through a post-sentence motion and his appellate brief contains the requisite Rule 2119(f) concise statement.

First, Bernard claims the sentence imposed by the court was excessive, as the court ran the sentences consecutively, as opposed to concurrently. "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Moury***, 992 A.2d 162, 171-172 (Pa. Super. 2010).

The sentence imposed here, an aggregate of thirty-three to sixty-six years in prison, is not unduly harsh given the severity of the crimes at issue. Bernard robbed, beat, and tied up the elderly victim. The crime was pre-meditated and was intended to victimize a vulnerable person. The court was entitled to consider the danger Bernard presents to the community and impose

sentence accordingly. Thus, Bernard's excessiveness claim does not raise a substantial question.

In his second sentencing claim, Bernard contends his sentences for robbery and terroristic threats should have merged. This claim presents a challenge to the legality of his sentence. **See Commonwealth v. Quintua**, 56 A.3d 399, 400 (Pa. Super. 2012). Thus, we review the entire record *de novo* to evaluate it. **See Commonwealth v. Baldwin**, 985 A.2d 830, 833 (2009). Merger is appropriate only when two distinct criteria are satisfied: "1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included within the statutory elements of the other." **Id**.

The court found Bernard guilty of robbery under 18 Pa.C.S.A. § 3701(a)(1)(ii) and terroristic threats under 18 Pa.C.S.A. § 2706(a)(1). To find Bernard guilty of robbery under § 3701(a)(1)(ii), the court was required to find that he threatened Stackhouse with, or intentionally put her in fear of, immediate serious bodily injury while stealing from her. Bernard's conviction of terroristic threats under § 2706(a)(1) required the court find him guilty of threatening Stackhouse with a crime of violence with the intent to terrorize her.

We have no difficulty in determining Bernard has not established either of the criteria necessary for merger of these sentences. First, the convictions did not arise from a single criminal act. Among other threats during the

- 11 -

robbery, Bernard threatened to "cut" her at two different times. N.T., Bench Trial, 2/17/16, at 93.

Second, the crimes each have at least one element that is not contained in the other. Robbery requires a theft, while terroristic threats does not. Similarly, terroristic threats requires an intent to terrorize, while robbery does not.

We therefore conclude Bernard's merger claim merits no relief. As we conclude none of Bernard's claims on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/18